**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

AUG 1 5 2017

JAMES W. McCORMACK, CLERK

By:_____
　　　　　　　　　　　　　　DEP CLERK

**CATAR CLINIC OF HOT SPRINGS,**
**LLC & STOCKTON MEDICAL**
**GROUP, LTD.**

**PLAINTIFFS**

**Vs.**　　　　　CASE NO.: _4:17-cv-520-DPM_

**THOMAS F. ROBINSON, M.D., TIFFANY**
**TERRY, ARKANSAS RECOVERY CLINIC,**　　　　**DEFENDANTS**
**ARC REHABILITATION CENTER, P.A.,**
**CSCB REHABILITATION MANAGEMENT**
**GROUP, LLC, ADDICTION RECOVERY**　　This case assigned to District Judge _Marshall_
**CARE OF LITTLE ROCK, ARC CLINIC,**　　and to Magistrate Judge _Kearney_
**& JANE DOE #1**

## VERIFIED COMPLAINT

Come now the Plaintiffs, CATAR Clinic of Hot Springs, LLC, and Stockton Medical Group, Ltd. (collectively, "Plaintiffs"), by and through undersigned counsel, who state the following:

## JURISDICTION AND VENUE

1.　　Plaintiff CATAR Clinic of Hot Springs, LLC is a limited liability company organized under the laws of the State of Arkansas with its principal place of business in Garland County, Arkansas.

2.　　Plaintiff Stockton Medical Group, Ltd. is a corporation organized under the laws of the State of Arkansas with its principal place of business in Pulaski County, Arkansas.

3.　　Defendant Thomas F. Robinson, M.D., ("Dr. Robinson") is an Arkansas citizen licensed to practice medicine within the State of Arkansas and domiciled in Pulaski County, Arkansas.

1

4.     Defendant Tiffany Terry ("Terry") is an Arkansas citizen domiciled in Garland County, Arkansas.

5.     Arkansas Recovery Clinic is a corporation or partnership doing business in Pulaski County, Arkansas that is not registered with the Arkansas Secretary of State.

6.     ARC Rehabilitation Center, P.A. ("ARC Rehabilitation") is a professional association organized under the laws of the State of Arkansas with its principal place of business in Pulaski County, Arkansas.

7.     CSCB Rehabilitation Management Group, LLC ("CSCB") is a limited liability company organized under the laws of the State of Arkansas doing business in Pulaski County, Arkansas as "ARC Rehabilitation Center" with a principal address listed with the Arkansas Secretary of State of 12555 Gulf Freeway, Houston, Texas.

8.     Addiction Recovery Care of Little Rock is a corporation or partnership doing business in Pulaski County, Arkansas that is not registered with the Arkansas Secretary of State.

9.     ARC Clinic is a corporation or partnership doing business in Pulaski County, Arkansas that is not registered with the Arkansas Secretary of State

10.     Jane Doe # 1 is an individual with the first name of "Nikki" currently working for Dr. Robinson, Arkansas Recovery Clinic, ARC Rehabilitation, and/or CSCB or a combination thereof. She is believed to be a citizen and resident of Arkansas.

11.     Dr. Robinson, Terry, Arkansas Recovery Clinic, ARC Rehabilitation Center, CSCB, Addiction Recovery Care of Little Rock, ARC Clinic, and Jane Doe #1 shall be collectively referred to as "Defendants" herein.

12.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

2

13.    This Court has personal jurisdiction over the Defendants as they are all domiciled in, or operate businesses in, the State of Arkansas.

14.    Venue lies properly in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTS

15.    Plaintiffs together have operated medical treatment centers throughout the state of Arkansas for substance abuse patients since 1994.

16.    While they are separate corporate entities, Plaintiffs are more or less owned and controlled by the same individuals and operate in complementary fashion to provide medical treatment to substance abuse patients.

17.    Collectively, Plaintiffs operate medical treatment clinics in North Little Rock, Hot Springs, Fayetteville, Jonesboro, and Texarkana, Arkansas.

18.    Dr. Thomas Robinson was paid by Plaintiffs to provide treatment to substance abuse patients as an independent contractor in their Hot Springs and North Little Rock locations from December 1, 2014 until July 27, 2017.

19.    A true and complete copy of Dr. Robinson's Physician Services Agreement with Plaintiff CATAR Clinic of Hot Springs, LLC is attached hereto as Exhibit 1.

20.    Plaintiff CATAR Clinic of Hot Springs, LLC employed Tiffany Terry in their Hot Springs location from December 20, 2013 to July 13, 2017.

21.    Terry was originally hired as a counselor and later promoted to clinic manager in January 2016 until her July 2017 resignation.

22.    Plaintiffs respect their patients' confidentiality and rigorously adhere to the practices and principles of the Health Insurance Portability and Accountability Act of 1996

("HIPAA"), subsequent amendments, and applicable regulations, as well as Arkansas confidentiality laws and regulations.

23.    Plaintiffs have ethical and legal obligations as facilities providing medical treatment and maintain policies that require physicians working at their clinics to adhere to HIPAA and all applicable laws.

24.    Plaintiffs also maintain clinical policies and procedures for all medical providers and staff working in their clinics.

25.    Plaintiffs have disclosed these policies to Dr. Robinson on numerous occasions.

26.    Plaintiffs also provided these clinical policies and procedures to Terry.

27.    When Dr. Robinson began work at Plaintiffs' locations, Plaintiffs provided a HIPAA Agreement Form to Dr. Robinson and he agreed to comply with the agreement as evidenced by his signature on the form. A true and complete copy of this executed form is attached to this Complaint as Exhibit 2.

28.    Plaintiffs made it known to Dr. Robinson that his ability to practice medicine in Plaintiffs' clinics was contingent upon strict adherence to HIPAA laws and regulations, among his other ethical and legal requirements as a physician in the State of Arkansas.

29.    Plaintiffs would not have agreed to allow Dr. Robinson to practice medicine in their clinics had he refused to sign the HIPAA Agreement Form or abide by its terms.

30.    The requirement to rigorously adhere to HIPAA laws and regulations is standard practice for substance abuse treatment clinics in Arkansas and beyond.

31.    Plaintiffs also made it known to Dr. Robinson that his ability to practice medicine in their clinics was contingent upon him not competing with Plaintiffs or practicing medicine in a

4

clinic that competed with Plaintiffs in treating substance abuse patients while he worked at Plaintiffs' clinics.

32.    When Terry began work at Plaintiffs' clinics, Plaintiffs provided a HIPAA Agreement Form to Terry and she agreed to comply with the agreement as evidenced by her signature on the form. A true and complete copy of this executed form is attached to this Complaint as Exhibit 3.

33.    Plaintiffs made it known to Terry that her employment was contingent upon strict adherence to HIPAA laws and regulations, among other ethical and legal requirements.

34.    Plaintiffs would not have hired Terry had she refused to sign the HIPAA Agreement Form or abide by its terms.

35.    This requirement for employees to rigorously adhere to HIPAA laws and regulations is standard practice for substance abuse treatment clinics in Arkansas and beyond.

36.    Plaintiffs also made it known to Terry that her employment was contingent upon agreeing not to work for a competitor of Plaintiffs' that treated substance abuse patients while she worked at Plaintiffs' clinics.

37.    Terry resigned from her position as office manager of Plaintiffs' Hot Springs office on July 13, 2017.

38.    After repeated failure to adhere to Plaintiffs' requirements for practicing privileges in Plaintiffs' clinics, Plaintiffs revoked Dr. Robinson's ability to practice at their clinics on July 27, 2017.

39.    Arkansas Secretary of State records show that Dr. Robinson registered ARC Rehabilitation on May 17, 2017 while he was still enjoying the privilege to practice at Plaintiffs'

5

clinics. A true and complete copy of ARC Rehabilitation's publically-available file from the Arkansas Secretary of State is attached hereto as Exhibit 4.

40.     ARC Rehabilitation is a substance abuse treatment facility located a 1 Lile Court, Suite 103, Little Rock, Arkansas.

41.     Before her departure from Plaintiffs' clinics, Terry engaged in a pattern and practice of denigrating Plaintiffs' clinics to patients and employees.

42.     Terry attempted to coerce other employees to leave Plaintiffs' clinics and admitted to other employees that she was attempting to start a competing substance abuse clinic.

43.     Terry also told other employees that Plaintiffs' clinic was closing and that they should begin looking for other jobs.

44.     Plaintiffs' computer log shows that Terry deleted bills for certain patients from Plaintiffs' computer system without cause prior to resigning.

45.     After her resignation from Plaintiffs' clinic, Terry immediately began working for Dr. Robinson, Arkansas Recovery Clinic, ARC Rehabilitation, CSCB, Additional Recovery Care of Little Rock, and/or ARC Clinic, where she continues to work.

46.     Terry maintains an account on the social media platform Facebook under the name "Tiffany Anderson-Keck".

47.     On or about August 1, 2017, Terry posted the following message to her social media account word for word:

> I try to do my best to help people everyday, but sometimes, it just doesn't matter. Today, my previous employer, who I left because of instability and poor management and ownership, decided to call me TWO MONTHS after I left their company to tell me that I am the piece of shit because their business is struggling to keep their heads about water. I usually don't do this, but it makes me feel good so 1) it's not my fault that your business if failing 2) grow up. I have moved on. I work with a new company that is TRULY dedicated to helping others and is drama free 3) I offered advice on how to save your company, you didn't want it and I

vowed never to work for a company I didn't believe in 4) start listening to your employees because I am tired of them calling me every time they hate you for the same reasons I did 5) don't hire family – never works out well for anybody 6_ lastly, but most importantly, if you would state focusing on the important things in your business, a) your employees wouldn't leave and it wouldn't be so hostile and unstable b) your patients would see that you care and c) your business wouldn't be struggling. However, I must thank you because you have only showed me how much I truly meant to you, since 60 days after leaving, you are still calling me. Although you didn't show it, I now know I was needed. MAYBE (doubt it), it will cause you to open your eyes and stop with the high school drama and focus on how to improve your business before another on comes around and rightfully takes it from you. Patient care should ALWAYS come first, as does treating your employees respectfully. Not money, greed, and drama. You're welcome for all of the hard work I put in. I can assure you, I have learned a lot from mistakes you all have made at your company, and for that I am grateful. I will be sure to utilize that where I'm at now…

P.S. If anyone is interested in a job, there are many other suboxone programs opening and another methadone program opening in Bryant. Apply away because YOU ARE WORTH HAVING A BETTER JOB where you feel appreciated! Don't complaint if you're not willing to do something about it!

48.     A screenshot copy of this posted messaged is attached hereto as Exhibit 5.

49.     A number of people have seen and commented on this social media post.

50.     Terry posted these false accusations with malice, in willful and wanton disregard for the business practices of Plaintiffs, and in an attempt to defame Plaintiffs and harm their clinics.

51.     Contrary to Terry's posts, Plaintiffs' clinics are financially viable and have been for years.

52.     At the time of her social media post, Terry knew that Plaintiffs' clinics were financially viable due to her former position as officer manager of Plaintiffs' Hot Springs clinic.

53.     Plaintiffs have recently been made aware that their patients are being solicited via phone calls and text messages to their personal cellular phones by one or more new substance abuse clinic(s).

54.     One of Plaintiffs' patients recently showed Plaintiffs a text message the patient had received within the past month, which stated:

> Hi its Nikki from Arkansas Recovery Clinic in Little Rock. We are a new suboxone program that is soon looking to start taking insurance. We are approximately 60 days away from accepting all forms of insurance (fingers crossed). Until then, we are $200 per month, and for every person you refer that makes and keeps an appointment, you get $25 off of that. Our address is 1 Lile CT suite 103 Little Rock, AR, 72205. And our phone number is 501-400-7504. We do not force you to taper and your price includes counseling and all labs and screens. Once we are accepting insurance, we will back date a claim for you for reimbursement. We have Dr. Thomas Robinson available to see patients…"

55.     A true and complete copy of this solicitation via text message is attached hereto as Exhibit 6.

56.     Other patients have told Plaintiffs about receiving similar suspicious solicitations.

57.     One patient recently told Plaintiffs that Defendants or their representatives called the patient, stated that they knew of the patient's insurance coverage and would accept that insurance, and stated that Defendants would "love to have" the patient switch to their new substance abuse clinic.

58.     Another patient recently told Plaintiffs that Defendants or their representatives solicited the patient by phone and stated that they received the patient's phone number from a "client" of Plaintiff Stockton Medical Group.

59.     Some of these solicitations have expressly stated that Defendants' clinic is "cheaper" than Plaintiffs' clinics.

60.     It has become apparent that Defendants currently are, and have been, soliciting Plaintiffs' patients using information only obtainable from Plaintiffs' internal client records, such as patient name, patient mobile phone numbers, and Plaintiffs' pricing.

61.     It would be impossible for Defendants to know patient mobile phone numbers, patient identities, and Plaintiffs' pricing without obtaining that information from Plaintiffs' internal records.

62.     At no time have Plaintiffs authorized any individual or entity to remove or use patient information from Plaintiffs' records.

63.     At no time have any of Plaintiffs' patients consented to Plaintiffs releasing their confidential patient information to any Defendant.

64.     These solicitations, which are a result of improper use of confidential patient information, are a direct violation of HIPAA, Arkansas's confidentiality laws, and the ethical practices for physicians in the state of Arkansas and the United States.

65.     Maintenance of confidential patient information is of utmost importance in substance abuse treatment.

66.     Patient trust that their information will be maintained confidentially is paramount to effective treatment. Conversely, if patients are concerned that their confidential information can be disclosed outside of treatment centers, it will have a chilling effect on the treatment of substance abuse in Arkansas and the United States.

67.     Disclosure of patient information is likely to result in patients being harassed, stigmatized, embarrassed, annoyed, and retaliated against in their communities and workplaces for drug addiction.

68.     Disclosure of patient information is also likely to result in patients voluntarily foregoing proper medical treatment so as to avoid the stigma associated with drug addiction.

69.     As a result of Defendants' unlawful use and disclosure of Plaintiffs' patients' confidential information, Plaintiffs are now in the process of notifying patients in accordance with applicable federal and state law that its internal records have been breached.

70.     Plaintiffs have in fact already lost clients to Dr. Robinson and anticipate losing additional patients as a result of having to disclose this breach of confidential data.

71.     Dr. Robinson is currently practicing at ARC Rehabilitation Center at 1 Lile Court, Suite 103, Little Rock, Arkansas, 72205.

72.     CSCB is doing business as "ARC Rehabilitation Center" according to the Arkansas Secretary of State and has the same registered phone number as ARC Rehabilitation.

73.     A true and complete copy of CSCB's registration with the Arkansas Secretary of States is attached hereto as Exhibit 7.

74.     Jane Doe, who self-identifies as "Nikki" from Dr. Robinson's office, has identified a third company or partnership doing business at this address: Arkansas Recovery Clinic. See Ex. 5.

75.     In the text message solicitation, "Nikki" stated that Dr. Robinson was practicing at Arkansas Recovery Clinic.

76.     Arkansas Recovery Clinic is not registered with the Arkansas Secretary of State either as a corporate or fictitious name.

77.     Upon information and belief, Arkansas Recovery Clinic is not authorized to conduct business within the State of Arkansas.

78.     Plaintiffs have discovered a recently-created Facebook page and website for Addiction Recovery Care of Little Rock that lists two office locations: 1 Lile Court, Suite 103, Little Rock, Arkansas, 72205 and 12555 Gulf Freeway, Houston, Texas.

10

79.     According to the Facebook page for this entity, Dr. Robinson is practicing for Addiction Recovery Care of Little Rock. A true and complete copy of these websites are attached hereto as Exhibit 8.

80.     Upon information and belief, Addiction Recovery Care of Little Rock is not authorized to conduct business within the State of Arkansas.

81.     The business entity physically located at 1 Lile Court, Suite 103, Little Rock, Arkansas, 72205 has a business sign of "ARC Clinic" posted on its front door.

82.     Signs at 1 Lile Court, Little Rock, Arkansas indicate the only business in Suite 103 is ARC Clinic.

83.     Upon information and belief, ARC Clinic is not authorized to conduct business within the State of Arkansas.

84.     All Defendants claim to be located at 1 Lile Court, Suite 103, Little Rock, Arkansas, 72205.

85.     It has become apparent that other individuals and entities are conspiring with Dr. Robinson to solicit Plaintiffs' patients and use suspect insurance billing practices to further lure them to Defendants for treatment.

86.     Exhibit 6 states that Dr. Robinson's office is willing to "back date" insurance claims for patient reimbursement —that is, falsify or fraudulently report office visits to insurance companies.

87.     Absent more information, this practice indicates the potential for insurance fraud in the largest metropolitan areas in Arkansas.

11

88.     Plaintiff CATAR Clinic of Hot Springs, LLC recently found a brochure for "ARC", a substance abuse treatment center, in its office drawers. A true and completely copy of this brochure is attached hereto as Exhibit 9.

89.     Upon information and belief, Terry accidentally left this brochure in Plaintiffs' possession and had handed out this brochure to patients prior to resigning in an attempt to lure patients to Defendants.

90.     Upon information and belief, Terry handwrote on this brochure "Takes Ins!" and circled Defendants' Little Rock location.

91.     Plaintiffs have already suffered damages, in the form of lost patients, reputational damages, and lost profits, among other damages that will be more fully ascertained through this suit.

92.     The damage done by the Defendants may be irreversible, and Plaintiffs anticipate that Defendants' actions could result in the collapse of one or more Plaintiffs' clinics due to irreparable reputational damage that drives away a highly-reticent patient community.

## COUNT I – COMPUTER FRAUD AND ABUSE (18 U.S.C. §1030) & REQUEST FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

93.     The preceding paragraphs are hereby incorporated as if stated here word-for-word.

94.     Plaintiffs are subject to the Standards for Privacy of Individually Identifiable Health Information, issued by the United States Department of Human Services pursuant to HIPAA. 45 C.F.R. §§ 160.102 and 160.103.

95.     45 C.F.R. 160.103 defines individually identifiable health information maintained in electronic media or any other form as "protected health information" under HIPAA, which is subject to confidentiality and security controls by health care providers.

12

96.     Individual patient names, contact information, and medical conditions are identified as protected health information under HIPAA and applicable regulations.

97.     The Computer Fraud and Abuse Act provides a right of action for "any person who suffers damage or loss by reason of a violation" of 18 U.S.C. § 1030.  See 18 U.S.C. § 1030(g).

98.     18 U.S.C. §1030(a)(4) defines one such violation to occur where an individual "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period."

99.     18 U.S.C. §1030(a)(5)(C) defines another such violation to occur where an individual "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss."

100.    Plaintiffs maintain their patients' medical and billing records in two separate computer servers.

101.    Plaintiff CATAR Clinic of Hot Springs maintains its own computer server that can be accessed by any individual computer at its clinic or by any off-site computer with special administrative credentials.

102.    Plaintiff Stockton Medical Group maintains a separate, cloud-based computer server that can be accessed from a computer at any one of its clinics or from any off-site computer with internet connection.

103.    Both servers are only accessible by treating physicians or employees at their clinics.

104.    Both of Plaintiffs' servers are password-protected, cannot be accessed without proper credentials, and are securely maintained.

13

105.     Defendant Dr. Robinson had access to both servers while practicing medicine in Plaintiffs' clinics.

106.     Defendant Terry had access to both servers while employed by CATAR Clinic of Hot Springs.

107.     Plaintiffs instruct all employees and treating physicians that patient information is to be used only for legitimate medical treatment, billing, or insurance purposes.

108.     Plaintiffs require every physician working at their clinics to execute a HIPAA Agreement Form. Work at Plaintiffs' clinics is contingent upon the physician's agreement to abide by HIPAA.

109.     Plaintiffs make it a requirement for every employee of their clinics to execute a HIPAA Agreement Form. Work at their clinics is contingent upon the employee's agreement to abide by HIPAA.

110.     By executing a HIPAA Agreement Form, each signatory agrees to: (i) follow and adhere to all federal laws regarding confidentiality of patient information; (ii) use and disclose confidential health information only the for purpose of performing legitimate medical or billing duties; (iii) not obtain or communicate more confidential health information than is necessary to perform legitimate medical or billing duties; (iv) take reasonable care to secure confidential health information so that others cannot access such information; (v) use confidential health information solely in accordance with HIPAA and applicable federal regulations; and (vi) immediately report unauthorized uses or disclosures of confidential health information, among other requirements.

111.     While Dr. Robinson and Terry worked at Plaintiffs' clinics and had access to Plaintiffs' internal computer system or shortly thereafter, one or more of Defendants illegally

14

accessed Plaintiffs' patient medical and billing records for the purposes of soliciting Plaintiffs' patients and undermining Plaintiffs' practice.

112.    One or more of Defendants either abused their limited access to Plaintiffs' patient files or accessed Plaintiffs' patient files without authorization or right.

113.    Defendants have used Plaintiffs' patient information for illegal and unethical purposes.

114.    Defendants have conspired together in furtherance of this objective.

115.    Defendants' actions have resulted in wrongdoing through abusing patients' expectation of confidentiality and furthering a conspiracy to commit insurance fraud.

116.    While it is not marketable, Plaintiffs' patient information is an item of value that has been collected over a number of years of medical practice.

117.    Plaintiffs have already lost patients to Defendants within the past six months causing more than $5,000 in injuries to Plaintiffs.

118.    Plaintiffs have suffered other losses during the past six months—including but not limited to reputational injury, the additional costs necessarily incurred to notify its patients of a data breach, and attorney fees—that total more than $5,000 in value.

119.    Plaintiffs engage in interstate commerce and have patients who are domiciled in states other than Arkansas.

120.    Many of Plaintiffs' patients prefer not to seek treatment in their own states in order to protect their confidentiality and instead travel from states outside of Arkansas to Plaintiffs' clinics for treatment.

121.    Plaintiffs' computer system, which is primarily used to maintain patient information, is affected by or involved in interstate commerce.

15

122.     Plaintiffs' computer systems are connected to the internet and accessible to physicians providing medical services at their clinics by accessing a remote portal through the internet.

123.     Ten or more computers are connected to each of Plaintiffs' respective servers and these servers may be accessed by any individual computer via the internet upon entry of the correct login credentials.

124.     Plaintiffs' computer systems control billing in Plaintiffs' clinics, and Terry's deletion of client billing records affected ten or more protected computers.

125.     Due to Defendants' willful violation of HIPAA and state law, Plaintiffs respectively request that the Court enter a temporary restraining order, ripening into a preliminary and permanent injunction, enjoining all Defendants and their agents, representatives, and associates from soliciting Plaintiffs' patients, disclosing protected patient information obtained unlawfully from Plaintiffs to any third parties, or otherwise using or accessing Plaintiffs' patient information for any reason whatsoever.

126.     This Court possesses the necessary jurisdiction to issue such equitable relief under 18 U.S.C. § 1030(g).

127.     Plaintiffs will suffer irreparable harm without the TRO and injunction.

128.     Without such an order, Plaintiffs will suffer irreparable harm to their reputation and may not be able to maintain their current patient population or salvage any relationships damaged by Defendants' meddling.

129.     The reputational harm resulting from Defendants' actions could potentially result in Plaintiffs' business shutting down.

130.     Additionally, Defendants are violating confidentiality protocols and have willfully shunned their HIPAA responsibilities, which is a violation of federal law.

131.     Plaintiffs hereby appear on behalf of their patients to protect their HIPAA and confidentiality rights, as explained below.

132.     Without the requested injunctive relief, Plaintiffs' patients may be subjected to ridicule, embarrassment, criminal investigation, loss of employment, loss of relationships or other injury due to the stigma surrounding drug addiction treatment.

133.     Defendants' actions could potentially subject Plaintiffs to liability and penalties under HIPAA and Arkansas's confidentiality laws and Plaintiffs are in the process of notifying all necessary parties of this apparent breach of patient information.

134.     Time is of the essence to protect Plaintiffs' patients who have not yet been solicited or had their improperly obtained confidential information improperly disclosed.

135.     Plaintiffs have a likelihood of success on the merits of their claims, as shown herein.

136.     Defendants have been illegally soliciting patients through confidential patient files and all of the Defendants are currently operating in a conspiracy to abuse patient confidentiality.

137.     Numerous patients have told Plaintiffs of Defendants' attempts to solicit them away from Plaintiffs' clinics using the tactics described herein.

138.     These solicitation attempts are no coincidence. Dr. Robinson and the Defendants would have no way to know that these particular individuals are in need of drug addiction treatment without a theft of patient information from Plaintiffs' clinics.

139.     They would also not have patient phone numbers without a theft of patient information from Plaintiffs' clinics.

17

140.    Defendants have also defamed Plaintiffs to their own patients and to other potential patients by disparaging Plaintiffs' services through false and misleading representations of fact.

141.    Due to the unique patient population at issue, Defendants have taken, and continue to attempt to take, advantage of patients who are reasonably unable to protect their own interests in court because of the stigma of their dependence on drugs.

142.    Defendants have advertised to Plaintiffs' current patients a business ("Arkansas Recovery Clinic") that is not registered with the Arkansas Secretary of State as a corporation authorized to do business within Arkansas.

143.    Exhibit 5 states that Dr. Robinson's office is willing to "back date" insurance claims for patients—indicating the potential for insurance fraud in the largest metropolitan areas in Arkansas.

144.    All of these actions are taken with reckless disregard to the rights of these patients and their need for confidential medical treatment.

145.    Defendants' unconscionable, false, and deceptive practices have been aimed at injuring Plaintiffs and their members or stockholders and in order to turn a profit for themselves while jeopardizing patient care.

146.    Plaintiffs also respectfully request that the Court enter a temporary restraining order, ripening into a preliminary and permanent injunction, enjoining all Defendants and their associates:

(a) from deleting or altering any records or patient information currently in their possession;

(b) from disclosing any patient information to any other parties; and

18

(c) from discussing or mentioning Plaintiffs, Plaintiffs' patients, Plaintiffs' clinics, or Plaintiffs' business practices in any media whatsoever, including but not limited to media networks and social media.

147. It will become necessary throughout the course of this case to review Defendants' internal records and other information to determine how many patients Defendants have improperly solicited.

148. Dr. Robinson has been contemplating this improper solicitation scheme for some time, having incorporated ARC Rehabilitation in May of this year even while continuing to work at Plaintiffs' clinics for several months in violation of his arrangement with Plaintiffs.

149. Plaintiffs will suffer irreparable harm in their ability to prosecute their claims if Defendants are allowed to alter or delete patient information for improperly-solicited clients.

150. Plaintiffs will suffer irreparable harm if Defendants continue to defame them in an attempt to lure patients away, particularly with this particular patient population.

151. For all of the terms of the requested TRO, Plaintiffs have no adequate remedy at law. Plaintiffs' patients have no guarantee that their confidential medical information will remain private without a TRO. Plaintiffs' patients who have already had their confidentiality breached by Defendants cannot continue to expect their records to remain private without a TRO prohibiting Defendants from using their records. Plaintiffs' clinics cannot survive if their patients are lured away or their reputation ruined. Plaintiffs' patients may suffer life-altering repercussions if their identities are revealed to the public or other solicitor. Plaintiffs cannot obtain proper discovery in this matter should client information be deleted or tampered with.

152. The TRO is necessary to limit the damage already caused by Defendants by preventing their improper conduct from spreading to all of Plaintiffs' patient files.

153.    Plaintiffs anticipate that the requested TRO will additionally aid the Arkansas Medical Board and any governmental entity that will potentially investigate this matter by preserving key documents.

154.    Neither Plaintiffs nor their counsel have provided notice to Defendants to quit this nefarious conduct or of their intent to seek a TRO.

155.    In this instance, notice would be futile; it would only allow Defendants to either continue soliciting as many patients as possible before an injunction is in place or to delete patient records as a means of covering their tracks.

156.    Defendants' nefarious conduct thus far removes any reasonable belief that Defendants respect patient confidentiality or ethical recordkeeping practices.

157.    Defendants will suffer no prejudice from the requested TRO, which only demands that Defendants preserve records in the regular course of business and stop improperly soliciting Plaintiffs' patients—both of which Defendants should already be doing.

158.    Plaintiffs agree to provide security in an amount that the Court considers proper pursuant to Federal Rule of Civil Procedure 65(c).

159.    As a direct result of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial pursuant to 18 U.S.C. §1030 (g).

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS
## 18 U.S.C. 1836(b)

160.    The preceding paragraphs are hereby incorporated as if stated here word-for-word.

161.    This cause of action is asserted alternatively to all other causes of action stated herein.

162.   The database of Plaintiffs' patient list and information is a per se trade secret accumulated only after years of medical practice and concerted effort to build a quality reputation with a particular patient base.

163.   This information is not readily ascertainable using proper means.

164.   This information provides Plaintiffs independent economic value from actual patients who have presented, and are likely to present again, for treatment.

165.   This information is highly secretive and confidential, as these patients only agree to present for treatment under the assurances of confidential treatment protected by law from disclosure or solicitation.

166.   Defendants have stolen this trade secret and are attempting to use it for their economic advantage to ruin Plaintiffs or at least steal a portion of their patients.

167.   Plaintiffs' patient information is related to a service used in, or intended for use in, interstate commerce.

168.   Defendants have conspired together in furtherance of this objective.

169.   Plaintiffs seek the equitable relief requested in Count I alternatively under this cause of action pursuant to 18 U.S.C. §1836(b)(3)(A).

170.   As a direct results of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial pursuant to 18 U.S.C. §1836(b)(3)(B).

171.   Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

21

172.     Plaintiffs likewise request an award of their attorney fees pursuant to 18 U.S.C. §1836(b)(3)(D)

### COUNT III – BREACH OF FIDUCIARY DUTY (OWED TO PLAINTIFFS)

173.     The preceding paragraphs are hereby incorporated as if stated here word-for-word.

174.     This cause of action is asserted alternatively to all other causes of action stated herein.

175.     As a physician providing services at Plaintiffs' clinics, Dr. Robinson held a fiduciary duty to Plaintiffs while he practiced medicine in Plaintiffs' clinics.

176.     Dr. Robinson's fiduciary duties included, but were not limited to, adhering to all ethical and legal patient confidentiality laws and not directly competing with Plaintiffs.

177.     Dr. Robinson knowingly competed against Plaintiffs for at least two months in 2017.

178.     Dr. Robinson would have continued directly competing against Plaintiffs had Plaintiffs not terminated his privileges at their clinics.

179.     Dr. Robinson knowingly and maliciously took or used confidential patient information for the purpose of illegal solicitation.

180.     Dr. Robinson's actions were wholly contradictory to his contractual duties with Plaintiffs, and violated his duties of fair dealing, good faith, honesty, and loyalty to both Plaintiffs and their patients.

181.     Likewise, Terry's fiduciary duties included, but were not limited to, adhering to all ethical and legal patient confidentiality laws, not directly competing with Plaintiffs, and not destroying employer records.

22

182.     Terry attempted to compete against Plaintiffs, tried to convince Plaintiff employees to leave with her to work for a new employer, knowingly and maliciously took or used confidential patient information for the purpose of illegal solicitation, and destroyed Plaintiff billing records without cause.

183.     Terry's actions were wholly contradictory to her duties as an employee and violated her duties of fair dealing, good faith, honesty, and loyalty.

184.     As a direct results of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

185.     Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY / CONTRACTUAL RELATIONS

186.     The preceding paragraphs are hereby incorporated as if stated here word-for-word.

187.     This cause of action is asserted alternatively to all other causes of action stated herein.

188.     Plaintiffs hold valid contractual relationships with their patients to provide medical treatment for substance abuse in return for payment.

189.     Each visit by an individual patient will yield revenue for Plaintiffs, up to $250 a visit or more depending on patient need.

190.     This revenue generates profit for Plaintiffs and allows Plaintiffs to staff their clinics.

191.     Additionally, Plaintiffs hold a valid business expectancy to continue seeing patients that seek treatment. All medical providers hold this business expectancy, but Plaintiffs are in a unique position to reasonably expect to provide treatment for a significant period of time to their

patients, as it is well known that drug addiction is a particularly difficult problem to overcome and treatment cannot typically occur in a short amount of time.

192.    Defendants knew that Plaintiffs had many patient relationships in each of their clinics throughout Arkansas.

193.    Defendants acted with malice to harm Plaintiffs by inducing multiple patients to terminate their relationship with Plaintiffs in favor of Defendants through false statements.

194.    Plaintiffs terminated Dr. Robinson's privileges at their clinics upon discovering that Dr. Robinson had chosen to provide improper treatment that was not in accordance with Plaintiffs' ethical and legal duties as health care providers.

195.    Dr. Robinson ignored drug test results and allowed patients improper access to prescription medication.

196.    These practices were intended to undermine Plaintiffs' relationships with their own patients in order to promote Dr. Robinson as a physician that would be seen as more lenient to patient desires, even though such "leniency" undermined the entire point of treatment by enabling drug-seeking behavior.

197.    Terry made numerous statements to patients and employees of Plaintiffs that attempted to undermine Plaintiffs' legitimacy and to sway patients and employees in favor of Defendants.

198.    Terry's improper statements were amplified by her position as office manager, which suggested that she had access to certain information that gave her a unique vantage point of Plaintiffs' operations.

199.    Plaintiffs have lost patients to Defendants in the past few months and continue to lose patients to Defendants.

24

200.    As a result of Defendants' concerted efforts, it is likely that these lost patients will not return to Plaintiffs' clinics for treatment.

201.    Defendants continue to solicit Plaintiffs' patients by using confidential patient files, which is per se illegal.

202.    Defendants have conspired together in furtherance of this objective.

203.    Defendants have a direct financial interest in continuing this illegal and improper behavior indefinitely until Plaintiffs lose all patients, at which point they would be required to cease operating.

204.    Plaintiffs' patients are extremely unlikely to pursue any cause of action against Defendants on their own behalf for fear of reprisal or harassment.

205.    Defendants' actions are as far outside the bounds of fair and free market competition as possible and were undertaken with malice.

206.    Defendants have violated their professional and ethical duties in a direct attempt to injure Plaintiffs.

207.    Defendants know that stealing confidential client information to hurt a direct business competitor is punishable by federal and state law but have done so nevertheless.

208.    As a direct result of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

209.    Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

## COUNT V – TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE

210.    The preceding paragraphs are hereby incorporated as if stated word-for-word.

211.   This cause of action is asserted alternatively to all other causes of action stated herein.

212.   Defendants have intentionally and maliciously engaged in conduct designed to interfere and prevent Plaintiffs from obtaining new clients or employees.

213.   Plaintiffs have spent a great many years building goodwill and a reputation in the substance abuse treatment industry.

214.   Plaintiffs' clinics depend upon their ability to attract new employees to fill vacancies and new positions and their ability to attract new patients

215.   Defendants are currently attempting to divert new patients and employees away from Plaintiffs.

216.   Defendants have conspired together in furtherance of this objective.

217.   Defendants are attempting to entice these individuals to their new practice through improper solicitations, as alleged above.

218.   By seeming to offer favorable treatment to substance abusers and alleging improper treatment at the hands of Plaintiffs, Defendants are attempting to drive new patients away from Plaintiffs by tainting the regional patient population and turning that population against Plaintiffs.

219.   Moreover, Plaintiffs have a reasonable expectation that their existing patients will return to them for additional treatment.

220.   Plaintiffs have a prospective advantage of future revenues they may reasonably generate through future patient appointments.

221.   Defendants have attempted to disrupt Plaintiffs' prospective advantages through unlawful means.

222.    Defendants' actions have been knowingly illegal and maliciously performed in an attempt for pecuniary gain.

223.    As a direct result of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

224.    Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages

## COUNT VI – MISAPPROPRIATION OF TRADE SECRETS
### Arkansas Code Annotated § 4-75-606

225.    The preceding paragraphs are hereby incorporated as if stated here word-for-word.

226.    This cause of action is asserted alternatively to all other causes of action stated herein.

227.    The database of Plaintiffs' patient list and information is a per se trade secret, as explained above.

228.    This information is not readily ascertainable using proper means.

229.    This information provides Plaintiffs independent economic value from actual patients who have presented, and are likely to present again, for treatment.

230.    This information is highly secretive and confidential.

231.    Defendants have stolen this trade secret and are attempting to use it to their economic advantage to ruin Plaintiffs or at least steal a portion of their patients.

232.    Defendants have conspired together in furtherance of this objective.

233.    Plaintiffs seek the equitable relief requested in Count I alternatively under this cause of action pursuant to Arkansas Code Annotated § 4-75-604.

27

234.     As a direct result of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial pursuant to Arkansas Code Annotated § 4-75-606.

235.     Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

236.     Plaintiffs likewise request an award of their attorney fees pursuant to Arkansas Code Annotated § 4-75-607.

## COUNT VII – OUTRAGE

237.     The preceding paragraphs are hereby incorporated as if stated word-for-word.

238.     This cause of action is asserted alternatively to all other causes of action stated herein.

239.     Defendants intended to inflict emotional distress on Plaintiffs or should have recognized that Plaintiffs' emotional distress would be likely to result from their actions.

240.     Defendants' conduct of stealing patient information for their own profit and to undermine the financial and reputational integrity of Plaintiffs for their own profit is extreme, outrageous, and utterly intolerable in a civilized society.

241.     Defendants have broken federal and state law to solicit vulnerable patients from Plaintiffs using confidential patient information.

242.     Defendants' use of confidential patient information for solicitation purposes has been outlawed for decades.

243.     Defendants' behavior is atrocious and tramples on the rights of vulnerable patients who are seeking treatment and a better life.

244.    Plaintiffs and its members and stockholders have suffered anguish and distress based on lost patients, breaches of patient confidentiality, and reputational injury.

245.    Not only have Plaintiffs' patient files become unsecure, exposing all of these patients to the possibility of public ridicule at the whim of Defendants, but Defendants are also attempting to use this highly-protected information for personal gain.

246.    Defendants have conspired together in furtherance of this objective.

247.    Defendants have magnified their despicable behavior by defaming Plaintiffs through social media.

248.    Defendants have sustained this pattern of behavior for months and appears they will continue indefinitely without remorse.

249.    Defendants' actions were undertaken with malice.

250.    As a direct results of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

251.    Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs' request an award of punitive damages.

## **COUNT VIII – DEFAMATION**

252.    The preceding paragraphs are hereby incorporated as if stated here word-for-word.

253.    This cause of action is asserted alternatively to all other causes of action stated herein.

254.    Defendants have engaged in a pattern of publishing or making false and misleading statements about Plaintiffs to others that harm Plaintiffs' reputation as medical providers.

255.    In particular, Terry's statement on social media about her "former employer" references Plaintiff CATAR Clinic of Hot Springs, LLC since it was Terry's most recent employer and the statement references a substance abuse treatment clinic.

256.    This statement was intended to defame Plaintiffs by delegitimizing their business practices and financial viability.

257.    This statement was published to Terry's contacts on social media and had the capacity to be shared beyond her limited social network through Facebook's features.

258.    A number of people read and commented on Terry's statement.

259.    The statement contains false statements.

260.    Plaintiffs' clinics were financially viable when Terry posted her statement and remain so; their business was not "failing."

261.    Upon information and belief, no employee of Plaintiffs ever called Terry complaining of their work environment.

262.    Terry's statement was reasonably calculated to cause harm to Plaintiffs and was posted with malicious intent, as shown by her statement that "I usually don't do this, but it makes me feel good so…"

263.    The maliciousness of this and the other actions of Defendants are only magnified by the fact that Terry threatened to help shut Plaintiffs' clinics down ("MAYBE (doubt it), it will cause you to open your eyes and stop with the high school drama and focus on how to improve your business before another one comes around and rightfully takes it from you.") (emphasis added).

264.    Defendants have made other false and misleading statements with the malicious intent to defame Plaintiffs.

30

265.    Defendants have conspired together in furtherance of this objective.

266.    As a direct results of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

267.    Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.


## COUNT IX – UNJUST ENRICHMENT

268.    The preceding paragraphs are hereby incorporated as if stated word-for-word.

269.    This cause of action is asserted alternatively to all other causes of action stated herein.

270.    Defendants have illegally and maliciously accessed confidential patient files for pecuniary gain.

271.    Even though they are not marketable by law, the identity of Plaintiffs' patients and their phone numbers are valuable to a physician seeking to provide substance abuse treatment.

272.    The identity of Plaintiffs' patients would be highly valuable to a physician or entity starting a new substance abuse treatment clinic, as Defendants currently are undertaking to do.

273.    Defendants' decision to steal Plaintiffs' patients' information was intentional, malicious, and done solely for Defendants' pecuniary gain.

274.    Defendants have conspired together in furtherance of this objective.

275.    Defendants are not entitled to know these patients' identities or use their information.

276.   Plaintiffs have lost patients to Defendants as a direct result of Defendants' solicitations and defamations.

277.   Justice demands that Defendants not be allowed to use Plaintiffs' patients' personal information for pecuniary gain or any other purpose.

278.   As a direct results of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

279.   Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

## COUNT X – COMPUTER FRAUD & TRESPASS

280.   The preceding paragraphs are hereby incorporated as if stated here word-for-word.

281.   This cause of action is asserted alternatively to all other causes of action stated herein.

282.   Arkansas Code Annotated § 5-41-106 provides a right of action for "any person whose property is injured" by a violation of Arkansas's computer fraud and trespass laws.

283.   Defendants have stolen data from Plaintiffs' computer servers that has caused more than $2,500 in damages to Plaintiffs

284.   Defendants have conspired together in furtherance of this objective.

285.   Defendants' actions constitute computer trespass, a Class D felony under Arkansas Code Annotated §5-41-104(b)(4).

286.   Defendants have maliciously accessed Plaintiffs' computer systems with the purposes of soliciting vulnerable patients and committing insurance fraud.

287.   Defendants have conspired together in furtherance of this objective.

32

288.   Defendants actions constitute computer fraud, a Class D felony under Arkansas Code Annotated § 5-41-103.

289.   As a direct results of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

290.   Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

291.   Plaintiffs also request an award of attorney fees, costs, and all other expenses which are the cost of suit pursuant to Arkansas Code Annotated § 5-41-106(a).

## COUNT XI – CIVIL ACTION BY CRIME VICTIM
### (Arkansas Code Annotated § 16-118-107)

292.   The preceding paragraphs are hereby incorporated as if stated here word-for-word.

293.   This cause of action is asserted alternatively to all other causes of action stated herein.

294.   Arkansas Code Annotated § 16-118-107 provides a right of action and damages for any person injured or damaged by reason or conduct of another person that would constitute a felony under Arkansas law.

295.   Defendants have stolen data information from Plaintiffs' computers causing damage of more than $2,500 to Plaintiffs, which constitutes computer trespass, a Class D felony under Arkansas Code Annotated § 5-41-104(b)(4).

296.   Defendants have maliciously accessed the computer system with the purpose to solicit vulnerable patients and commit insurance fraud, which constitutes computer fraud, a Class D felony under Arkansas Code Annotated § 5-41-103.

297.    Defendants' conduct constitutes an unlawful use or access to computers in order to execute a scheme to defraud and/or illegally obtain property, which is a Class C felony under Arkansas Code Annotated § 5-41-203(c).

298.    Defendants' illegal use of Plaintiffs' patients' information is a criminal use of property, which is a Class C felony under Arkansas Code Annotated §5-42-204.

299.    Defendants' theft of Plaintiffs' patient information has caused damages in excess of $5,000, which is at least a Class D felony under Arkansas Code Annotated § 5-36-103.

300.    Defendants who have received these patients' stolen information causing more than $5,000 in damages to Plaintiffs have received stolen property, which is at least a Class D felony under Arkansas Code Annotated § 5-36-106.

301.    Defendants' actions indicate that they have committed, or conspired to commit, healthcare fraud, which has the potential to be a felony depending on the amount of money involved under Arkansas Code Annotated § 5-37-217.

302.    Defendants Jane Doe and Dr. Robinson have committed insurance fraud, which is a Class D felony under Arkansas Code Annotated §§ 5-37-505 and 5-37-506.

303.    Defendants have committed violations of other Arkansas laws defining their conduct as felonious.

304.    All of these felonious acts have injured and damaged Plaintiffs.

305.    As a direct results of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

306.    Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

307.    Plaintiffs also request an award of attorney fees and costs pursuant to Arkansas Code Annotated § 16-118-107 (a)(3).

## COUNT XII – CIVIL CONSPIRACY

308.    The preceding paragraphs are hereby incorporated as if stated here word-for-word.

309.    This cause of action is asserted alternatively to all other causes of action stated herein.

310.    Defendants have engaged in nefarious conduct that has harmed Plaintiffs and their patients.

311.    Defendants have broken numerous laws and committed actionable torts by stealing Plaintiffs' patient names and information.

312.    Defendants have worked together in a conspiracy to steal Plaintiffs' patients for pecuniary gain.

313.    Defendants had the malicious intent to ruin or injure Plaintiffs by improperly soliciting Plaintiffs' patients through use of confidential information.

314.    Plaintiffs have been confronted about these improper solicitations by their current patients, many of whom have assumed that Plaintiffs voluntarily disclosed their private information to a third party.

315.    At no time have Plaintiffs allowed Defendants or any other individuals access to confidential patient information for solicitation purposes or any purpose other than proper medical treatment or billing.

316.    Defendants have schemed to accomplish an unlawful and immoral purpose, which has resulted in injury to Plaintiffs and their patients.

317.    As a direct result of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

318.    Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

## COUNT XIII – BREACH OF CONTRACT
### (Dr. Robinson)

319.    The preceding paragraphs are hereby incorporated as if stated here word-for-word.

320.    This cause of action is asserted alternatively to all other causes of action stated herein.

321.    By signing his Physician Services Agreement, Dr. Robinson agreed that he would not "employ or solicit the employment of any current or former Treatment Program employees, during the term of this Agreement and for a period of one (1) year after termination of this Agreement for any reason whatsoever, unless the Treatment Program gives its prior written consent thereto." See Exhibit 1.

322.    Despite agreeing to this provision, Dr. Robinson and Defendants currently employ Terry.

323.    In the same contract, Dr. Robinson further agreed to maintain the confidentiality of Plaintiffs' records.

324.    Despite this, Dr. Robinson and Defendants have improperly used Plaintiffs' patient records to solicit patients.

325.    Another term of Dr. Robinson's Physician Services Agreement was that he could not compete with Plaintiffs' clinics for substance abuse treatment while working at Plaintiffs' clinics by diverting patients or "any opiate addicted persons" away from Plaintiffs' clinics.

36

326.     Dr. Robinson has diverted opiate addicted persons away from Plaintiffs' clinics to his new clinic at ARC Rehabilitation.

327.     Dr. Robinson incorporated ARC Rehabilitation in May 2017 while still practicing medicine at Plaintiffs' clinics.

328.     ARC Rehabilitation is now, and always has been, a direct competitor with Plaintiffs' clinics.

329.     Dr. Robinson agreed to abide by HIPAA and any applicable regulations through executing his HIPAA Agreement Form. See Exhibit 2.

330.     Dr. Robinson's ability to practice medicine at Plaintiffs' clinics was contingent upon his compliance at all times with HIPAA and all ethical requirements of the medical profession. See Exhibit 1.

331.     Dr. Robinson has willfully violated his HIPAA duties for personal gain.

332.     The actions described herein constitute material breaches of Dr. Robinson's Physician Services Agreement and HIPAA Agreement Form and were undertaken with malicious intent.

333.     The Physician Services Agreement provides that Plaintiff CATAR Clinic of Hot Springs, LLC it entitled to an injunction restraining Dr. Robinson's behavior and Plaintiffs therefore seek the equitable relief requested in Count I alternatively under this cause of action.

334.     As a direct result of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

335.     Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

336.     Plaintiff CATAR Clinic of Hot Springs, LLC is entitled to an attorney fee award, as well as litigation costs, pursuant to Paragraph 18 of Dr. Robinson's Physician Services Agreement. See Exhibit 1.

337.     Plaintiffs therefore request that the Court award them their attorney fees and litigations costs.

## COUNT XIV – BREACH OF CONTRACT
### (Terry)

338.     The preceding paragraphs are hereby incorporated as if stated word-for-word.

339.     This cause of action is asserted alternatively to all other causes of action stated herein.

340.     Terry agreed to abide by HIPAA and any applicable regulations through executing her HIPAA Agreement Form. See Exhibit 3.

341.     Despite this, Terry and Defendants have improperly used Plaintiffs' patient records to solicit patients.

342.     Terry's actions described herein constitute a material breach of her HIPAA Agreement Form.

343.     Terry materially breached other requirements of her employment contract by violating Plaintiffs' employee policies.

344.     As a direct result of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

345.     Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

346.    Plaintiffs also request an award of attorney fees and costs, pursuant to Arkansas Code Annotated § 16-22-308.

## COUNT XV – PROMISORY ESTOPPEL
### (Dr. Robinson & Terry)

347.    The preceding paragraphs are hereby incorporated as if stated word-for-word.

348.    This cause of action is asserted alternatively to all other causes of action stated herein.

349.    Dr. Robinson promised not to (i) compete with Plaintiffs while he practiced medicine at their clinics, (ii) improperly use patient information, or (iii) employ Plaintiffs' employees for at least one year following the termination of his practicing privileges at Plaintiffs' clinics.

350.    Dr. Robinson and Terry both promised to abide by HIPAA through their HIPAA Agreement Forms.

351.    Plaintiffs reasonably relied upon their promises by allowing them to perform medical services (Dr. Robinson) and work at (Terry) their clinics.

352.    Any medical clinic owner would have reasonably relied upon these promises.

353.    Dr. Robinson and Terry should have reasonably expected Plaintiffs to act in reliance upon these promises by hiring them and allowing their continued employment at Plaintiffs' clinics.

354.    Injustice can only be avoided by holding Defendants accountable for their willful and malicious decision to violate this promise.

355.    As a direct result of Defendants' actions, Plaintiffs have suffered actual, consequential, and special damages and request an award of same in an amount that will be proven at trial.

356.    Due to the maliciousness and bad faith of Defendants, and out of a need to discourage similar conduct by others, Plaintiffs request an award of punitive damages.

## COUNT XVI – INVASION OF PRIVACY

357.    The preceding paragraphs are hereby incorporated as if stated word-for-word.

358.    This cause of action is asserted alternatively to all other causes of action stated herein.

359.    Plaintiffs' patients are extremely unlikely to appear on this or any other matter to assert their own rights due to the stigma surrounding their condition.

360.    Plaintiffs therefore appear on behalf of their patients to assert an invasion of privacy claim.

361.    One or more of Defendants have stolen Plaintiffs' patients' personal information that identifies them as being treated for drug addiction.

362.    These personal health records are highly sensitive and currently being used for an improper purpose.

363.    One or more of the Defendants then published and disseminated said information to others for solicitation and other improper purposes.

364.    Plaintiffs' patients never consented to having their personal health records used in this manner or any other manner inconsistent with ethical medical treatment.

365.    Not only have Plaintiffs never consented to allow their patients' medical records to be used for any reason other than ethical medical treatment, they do not have the ability to so consent by law.

366.   Plaintiffs' patients have already been damaged by this breach of their health records, which have caused mental anguish, frustration, and fear of being publically identified as individuals seeking substance abuse treatment.

367.   Plaintiffs' patients may also suffer loss of employment or other damages due to this breach of confidential patient information, the amount of which will only be ascertainable through proper discovery.

368.   Plaintiffs' assert that their patients are entitled to actual, consequential, special, and punitive damages from Defendants.

369.   Plaintiffs herein appear on behalf of their patients for the limited purpose of preserving their patients' rights to suit in this matter since it is unlikely any will appear as a party of record.

370.   Plaintiffs request that damages for their patients' injuries be placed by the Court into a special victim compensation fund for the purpose of disbursement to their patients for the abuse of said patients' confidential health information by Defendants.

371.   Plaintiffs request that the Court oversee the disbursement of said fund to their patients in any fair and equitable manner it sees fit.

372.   Plaintiffs possess proper standing to assert this claim on behalf of their patients for if they can properly protect said patients to the best of their ability, it will build goodwill, amend relationships harmed by Defendants' unlawful breach of confidentiality, and result in patients returning to Plaintiffs for proper care.

373.   This would result in increased patient capacity and revenue at their clinics.

## COUNT XVII – BREACH OF FIDUCIARY DUTY (OWED TO PATIENTS)

374.     The preceding paragraphs are hereby incorporated as if stated here word-for-word.

375.     This cause of action is asserted alternatively to all other causes of action stated herein.

376.     As explained herein, Plaintiffs' patients are unlikely to appear in this matter and therefore Plaintiffs appear on behalf of their patients to assert a breach of fiduciary duty claim.

377.     One or more of Defendants have stolen Plaintiffs' patients' personal information that identifies them as being treated for drug addiction.

378.     These personal health records are highly sensitive and currently being used for an improper purpose.

379.     One or more of the Defendants then published and disseminated said information to others for solicitation and other improper purposes.

380.     This use of patient information violates Dr. Robinson's and Terry's fiduciary duties to Plaintiffs' patients as health care providers and health care administrators.

381.     Dr. Robinson and Terry have violated their duties of fair dealing, good faith, honesty, and loyalty to Plaintiffs' patients by abusing their expectation of confidentiality.

382.     Defendants have conspired together in furtherance of this objective.

383.     Plaintiffs' patients never consented to having their personal health records used in this manner or any other manner inconsistent with ethical medical treatment.

384.     Not only have Plaintiffs never consented to allow their patients' medical records to be used for any reason other than ethical medical treatment, they do not have the ability to so consent by law.

385.   Plaintiffs' patients have already been damaged by this breach of their health records, which have caused mental anguish, frustration, and fear of being publically identified as individuals seeking substance abuse treatment.

386.   Plaintiffs' patients may also suffer loss of employment or other damages due to this breach of confidential patient information, the amount of which will only be ascertainable through proper discovery.

387.   Plaintiffs' assert that their patients are entitled to actual, consequential, special, and punitive damages from Defendants.

388.   Plaintiffs herein appear on behalf of their patients for the limited purpose of preserving their patients' right to suit in this matter since it is unlikely any will appear as a party of record.

389.   Plaintiffs request that damages for their patients' injuries be placed by the Court into a special victim compensation fund for the purpose of disbursement to their patients for the abuse of said patients' confidential health information by Defendants.

390.   Plaintiffs request that the Court oversee the disbursement of said fund to their patients in any fair and equitable manner it sees fit.

391.   Plaintiffs possess proper standing to assert this claim on behalf of their patients for if they can properly protect said patients to the best of their ability, it will build goodwill, amend relationships harmed by Defendants' unlawful breach of confidentiality, and result in patients returning to Plaintiffs for proper care.

## **RESERVATION OF RIGHTS AND JURY DEMAND**

392.   Plaintiffs hereby reserve their rights to plead further and amend this complaint upon discovery of additional information.

393.   Plaintiffs demand a trial by jury.

WHEREFORE Plaintiffs pray that the Court: enter the requested temporary restraining order ripening into a preliminary injunction, together with judgment awarding them injunctive relief;  award them all actual and compensatory damages, which exceed $75,000; award them special damages that include, but are not limited to, lost profits, loss of business goodwill, and stigma damage; award them punitive damages, create a victim compensation fund for their patients and award such damages as may be appropriate to the fund, including actual, compensatory, and punitive damages, for disbursement to Plaintiffs' patients; award them their attorney fees and litigation costs, pre- and post-judgment interest; and award them other just and proper relief to which they may be entitled.

RESPECTFULLY SUBMITTED,

BY: _____

James D. Rankin III  (Ark. Bar No. 93197)
jim@ppgmrlaw.com
Julie D. Greathouse (Ark. Bar No. 99159)
julie@ppgmrlaw.com
Micah L. Goodwin (Ark. Bar No. 2015213)
micah@ppgmrlaw.com
PPGMR Law, PLLC
PO BOX 251618
Little Rock, AR 72225
501-903-6000
501-603-0556 (fax)

*Attorneys for Plaintiffs*

44

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**


CATAR CLINIC OF HOT SPRINGS,                                    **PLAINTIFFS**
LLC & STOCKTON MEDICAL
GROUP, LTD.


**Vs.**

THOMAS F. ROBINSON, M.D., TIFFANY
TERRY, ARKANSAS RECOVERY CLINIC,
ARC REHABITATION CENTER, P.A.,
CSCB REHABILITATION MANAGEMENT
GROUP, LLC, ADDICTION RECOVERY                                 **DEFENDANTS**
CARE OF LITTLE ROCK, & JANE DOE #1

## AFFIDAVIT OF MICHAEL CASILLIAS

I, Michael Casillas, as Director of Operations of CATAR Clinics of Hot Springs, LLC

and Stockton Medical Group, Ltd., Plaintiffs in the above-titled action, do hereby swear, affirm,

and verify that I have read the entire Verified Complaint set forth above and that the allegations

contained therein are true and correct to the best of my information, knowledge, and belief.

_____

Subscribed and sworn to before me, the undersigned Notary Public, this 15th day of
August, 2017.

_____

My Commission Expires  3- 4 - 21_____

OFFICIAL SEAL
NICOLE E. FRAZIER
No. 12381038
SALINE COUNTY
My Commission Expires 3-4-2021

# PHYSICIAN SERVICES AGREEMENT for C.A.T.A.R. CLINIC
## 1 Mercy Lane Suite 403 / Hot Springs, AR  71913

THIS AGREEMENT is entered into as of the undersigned date below, by and between the undersigned physician, henceforth referred to as "Physician" and CATAR CLINIC, an Arkansas Professional Corporation henceforth referred to as "Treatment Program".

WHEREAS Physician is licensed to practice in the State of Arkansas and is experienced in providing addiction treatment services, and

WHEREAS the Treatment Program is engaged in the business of providing outpatient addiction treatment services;

NOW THEREFORE, in light of the Treatment Program's need and qualification of Physician, it is mutually agreed as follows:

1.     TERMS OF AGREEMENT.  Subject only to the provisions for early termination herein set forth, the term of this agreement shall commence on the undersigned date and shall continue for an initial term of one (1) year.

        a) This Agreement will automatically renew for subsequent one (1) year terms.

        b) Prior to the expiration of this contract if either party wishes to cancel the renewal after each year, written notice should be given at least thirty (30) days prior to the expiration of this agreement.

        b) Additionally either party may terminate this agreement at any time for any reason by providing at least thirty (30) days prior written notice to the other party.

2.     DUTIES AND OBLIGATIONS.  Physician shall perform the following duties pursuant to this Agreement:

        a)     Provide the Treatment Program pre-approved physician coverage during the week, weekends and evenings as needed.
        b)     Provide the Treatment Program with written requests in advance for time off, including vacation days and continuing medical education;
        c)     Provide physician services through meetings with Treatment Program staff for weekly administrative and clinical reviews such as treatment planning, urine drug screens reviews, client treatment phase advancement, etc.;
        d)     Respond within a reasonable time frame (not more than thirty (30) minutes) to phone calls or pages from Treatment Program staff,  be reasonably available to respond to emergency situations either in person or by phone on evenings and weekends;
        e)     Expedite the admission process of new clients who meet admission criteria, either through personal interviews or telephone orders;
        f)     Sign all verbal and telephone orders in a timely manner (within twenty-four (24) hours) Monday through Friday morning, and by the following Monday morning on orders after Friday morning;
        g)     Write physician orders and progress notes on all clients he sees for follow-up or for changes in treatment such as dose increases, decreases, medically supervised withdrawal requests or other clinically related issues;
        h)     Consult with the Program Sponsor prior to giving orders on any unclear treatment issues;
        i)     Wiling to work closely with the Treatment Program's staff;
        j)     Agree to have the appropriate Treatment Program staff present when consulting clients in order to prevent patient confusion, manipulation, or patient false claims;
        k)     Agree to abide by all of the Treatment Program's Policies and Procedures, as well as all supervisory Federal and State Regulatory Agency's laws, rules, regulation, etc.; and
        l)     Perform other duties as assigned by the Treatment Program to maintain compliance with State or Federal Supervisory Agencies.

1

EXHIBIT

tabbies

3.     STATUS OF PHYSICIAN:  Physician's relationship to the Treatment Program shall be that of an independent contractor.  The Treatment Program and Physician acknowledge and agree that Physician is not an employee of the Treatment Program.  Nothing contained in this Agreement shall be construed to create a partnership, a relationship of principal and agent, or a joint venture between the Treatment Program and Physician, nor to authorize either the Treatment Program or Physician to act as a general or special agent of the other Party in any respect or as to any specific matter, except as may be specifically set forth in this Agreement.

4.     BENEFITS:     As an independent contractor, Physician shall not have claims against the Treatment Program for vacation pay, sick leave, retirement benefits, social security, worker's compensation, disability or unemployment insurance benefits or employee benefits of any kind.

5.     TAX REPORTING:  As an independent contractor, Physician is responsible for reporting any payments made to Physician by the Treatment Program on Physician's income tax return.  Physician understands that the Treatment Program will be supplying both the Physician and the Internal Revenue Service with a Form 1099 covering the amount of payments made under this agreement annually.  In addition, Physician indemnifies the Treatment Program from any liability should Physician be found to have failed to report payments under this agreement and the Treatment Program is subsequently found to have any liability there from.

6.     MEDICAL LICENSE:  Physician shall maintain an unrestricted license to practice medicine in the state of Arkansas.  Physician shall also maintain a DEA certificate with Class 2N certification.

7.     PROFESSIONAL LIABILITY INSURANCE:  Physician shall, at Physician's expense obtain and maintain professional liability insurance in the amount of $1,000,000.00 per occurrence and $3,000,000.00 annual aggregate.

8.     REASONABLE COOPERATION AND ASSISTANCE:  Physician shall provide reasonable cooperation and assistance to the Treatment Program in all situations that the Treatment Program has potential liability.  Physician agrees to provide the requested assistance, including, but no limited to, meeting with the Treatment Program's representatives, responding to requests for information and completing any required reports.  This assistance may be required after the termination of the Agreement, provided that it relates to services rendered by the Physician pursuant to this Agreement.

9.     DOCUMENTATION OF QUALIFICATIONS:
       Physician agrees to provide the Treatment Program with the following:

       a)     Curriculum Vitae
       b)     Documentation on Continuing Medical Education credits on an annual basis
       c)     Photocopy of Arkansas State License renewed annually
       d)     Photocopy of DEA Certificate with Class 2N designation
       e)     Photocopy of professional Liability Insurance
       f)     Tax Form W9
       g)     Other documents as applicable by federal or state law and clinic policy.

10.    NON-SOLICITATION OR RECRUITMENT OF TREATMENT PROGRAM EMPLOYEES:  Physician acknowledges that Treatment Program has experienced and will continue to expend substantial time, effort and money in recruiting and training its employees.  In consideration for this contract, Physician and his affiliates, joint venture partners, independent contractors, or any other entities with whom the Physician has an existing or planned business relationship shall not employ or solicit the employment of any current or former Treatment Program employees, during the term of this Agreement and for a period of one (1) year after termination of this Agreement for any reason whatsoever, unless the Treatment Program gives its prior written consent thereto.

2

11.    CONFIDENTIALITY:

a)    Physician agrees that during and after the Term of the Agreement, he shall not (other than pursuant to his duties hereunder) disclose, without the prior written consent of the Treatment Program, any material or substantial confidential knowledge or information pertaining to the Treatment Program or its business, personnel or plans, to any person, firm, corporation or other entity, for any reason or purpose whatsoever.

b)    Patient Charts and Records:  All patient files and records, accounts receivable records and patient lists shall be considered the property of the Treatment Program and may not be copied or removed from the Treatment Program's premises without the express written consent of the Treatment Program. The Treatment Program shall retain possession of such files and records in the event of the termination of this Agreement for any reason.

12.    UNFORSEEN CHANGES OF LAW: Notwithstanding any other provisions in this Agreement, if the governing agencies, or any other State or Federal or local Governmental agency passes, issues, promulgates any law, rule, regulation, Standard or interpretation, or if any court of competent jurisdiction renders any decision or issues any order, at any time while this Agreement is in effect, which prohibits, restricts, limits, or in any way substantially changes the methods or amount of reimbursement or cash flow, or otherwise significantly affects either party's right or obligations hereunder, either party may give the other notice of intent to amend this Agreement to the satisfaction of both parties, to compensate for such prohibition, restriction, limitation or change.  If this Agreement is not so amended in writing within ten (10) working days after such notice was given, this Agreement shall terminate as of midnight of the tenth (10th) working day after said notice was given.

13.    WAIVER OR BREACH: The waiver of either party, or a breach of any provisions of this Agreement, shall not operate or be construed as a waiver of any subsequent breach by the same party.

14.    NON-INTERFERENCE: Because Federal Law prohibits the treatment of opiate addiction with methadone by anyone except duly licensed Methadone Treatment Programs, the Physician hereby agrees to take no actions intended to recommend, refer, advise or divert any opiate addicted persons from Licensed Methadone Treatment Programs to any other not duly licensed facility, practitioner, addiction treatment programs, firm, corporation, association, or any other entity for any reason or purpose whatsoever involving or providing opiate addiction treatment to opiate addicts currently or previously in Medically assisted treatment at licensed Methadone treatment programs.

Physician further hereby agrees not to take any actions that intends to injure or may injure the relationship between Treatment Program and the opiate addicted clients in treatment at Treatment Program -either current or former Clients of Treatment Program as well as any future applicants for treatment at Treatment Program.

15.    TERMINATION:  This agreement will terminate, effective immediately, in the event of any of the following:

a)    Physician's license to practice medicine in the State of Arkansas is suspended, limited or revoked. DEA Class 2N permit is limited, suspended, terminated, not renewed, or revoked.

b)    Physician commits a felony or is guilty of a serious and substantial violation of the ethical and professional standards of the American Medical Association, the Society of Addiction Medicine, or the Arkansas Medical Board.

c)    The death or disability of the Physician. The Physician shall be considered disabled if he is unable to meet all obligations of this Agreement for a total of thirty (30) consecutive days during the term of this agreement.

16.    GOVERNING LAW:  This Agreement shall be subject to and governed by the laws of the State of Arkansas.

3

17.     ENTIRE AGREEMENT:  This Agreement contains the entire understanding between Treatment Program and Physician with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, expressed or implied, oral or written except as herein contained.

This agreement may not be modified or amended other than a written agreement signed by both parties.

18.     ENFORCEMENT:  In the event of a breach or threatened breach by either party of this Agreement, the other party shall be entitled to an injunction restraining such threatened breach.  Nothing herein shall be construed as prohibiting either party from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages from the other party.

If either party shall commit a breach of any provision or term of the Agreement and legal action is necessary to enforce any such provision or term, then the breaching party shall be liable to and reimburse the non-breaching party for the cost and expenses incurred in enforcing any such provision or term, including court costs and reasonable attorney's fees.

19.     ASSIGNMENT:  Physician may not assign, without the prior written consent of Treatment Program, his rights or obligations hereunder.  Treatment Program may assign its rights and obligations hereunder, without the prior written consent of the Physician.  The rights and obligations of Treatment Program hereunder, shall inure to benefit of and be binding upon the successors and assigns of Treatment Program.

20.     HOURLY COMPENSATION:  Pursuant to an hourly schedule approved in advance the Treatment Program agrees to compensate Physician at the rate of $75 per hour.

21.     ADDITIONAL COMPENSATION:  The Treatment Program agrees to compensate Physician at the rate of $100 per billable session for limited physician's services.  The Physician may also receive compensation for additional services at a mutually agreeable rate no greater than ½ of the billable rater for the services provided.

4

22.    NOTICE:  Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and sent certified or registered mail, return receipt requested, with signature required upon receipt, as follows:

If to Treatment Program:          CATAR Clinic of Hot Springs
                                  1 Mercy Lane Suite 403
                                  Hot Springs, AR  71913

If to Physician:                  Thomas Franklin Robinson, MD
                                  9 Cascade Creek
                                  Little Rock, AR  72223

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year herein above written.

Start Date:       11/18/14

Physician (Signature):

By:  _____        Date: __11/18/14__

Treatment Program (Signature):

By:  _____        Date: __11/18/14__
     Miguel A. Casillas, M.D.
     Federal Tax ID # 71-0802430
     President, Chief Executive Officer

5

# CATAR Clinic

This serves as verification that all employees will follow and adhere to all Federal Laws regarding confidentiality. We must, as a treatment team, have a clear understanding of the consequences if we do not uphold these Federal Laws. Your signing of this letter will indicate that you are aware of the Federal Laws regarding confidentiality and the consequences if you should reveal any information about any client without the proper release of information.

**The General Rule Prohibiting Disclosure:**
Except under certain specified conditions, the regulations prohibit the disclosure of records or other information concerning any client without the proper consent form signed by client to give the program permission to release said specific information. (Federal Code 2.12, 2.3 (a) (CFR 42 & HIPPA)

This prohibition on unauthorized disclosure applies whether or not the person seeking information already has the information, has other means of obtaining it, enjoys official status, has obtained a subpoena or warrant, or is authorized by state law. (Federal Code 2.13, (b), 2.20). Any state provision that would permit or require a disclosure prohibited by the federal rules is invalid. However, some states may require greater confidentiality than the federal regulations (Federal Code 2.20). Any violations to this law could bring a breach of confidentiality law suit against the *employee* or the corporation. Any *employee* found to be violating client's confidentiality can be *terminated immediately*.

I acknowledge that during the course of performing my assigned duties I may have access to, use, or disclose confidential health information. I hereby agree to handle such information in a confidential manner at all times during and after my employment and commit to the following obligations:

A. I will use and disclose confidential health information only in connection with and for the purpose of performing my assigned duties
B. I will request, obtain or communicate confidential health information only as necessary to perform my assigned duties and shall refrain from requesting, obtaining or communicating more confidential health information than is necessary to accomplish my assigned duties
C. I will take reasonable care to properly secure confidential health information on my computer and will take steps to ensure that others cannot view or access such information. When I am away from my workstation or when my tasks are completed, I will log off my computer or use a password-protected screensaver in order to prevent access by unauthorized users.
D. I will not disclose my personal password(s) to anyone without the express written permission of my department head or record or post it in an accessible location and will refrain from performing any tasks using another's password

I understand that as an employee, the use and disclosure of patient information is governed by the rules and regulations established under HIPAA, the Health Insurance Portability and Accountability Act of 1996, and related policies and procedures. Therefore, with regard to patient information, I commit to the following additional obligations:

A. I will use and disclose confidential health information solely in accordance with the federal regulations clinic policies set forth above or elsewhere. I also agree to familiarize myself with any periodic updates or changes to such policies in a timely manner.
B. I will immediately report any unauthorized use or disclosure of confidential health information that I become aware of to the appropriate supervisor using the reporting procedure provided at the company's website.

I also understand and agree that my failure to fulfill any of the obligations set forth in this Agreement and/or my violation of any terms of this Agreement shall result in my being subject to appropriate disciplinary action, up to and including, termination of employment.

PRINTED NAME: _Thomas Robinson_    EMP #: _____

SIGNATURE: _Thomas Robinson_    DATE: _01/21/2015_

WITNESS: _Ashley Wylie, LPN_

**EXHIBIT**
2

# CATAR Clinic

This serves as verification that all employees will follow and adhere to all Federal Laws regarding confidentiality. We must, as a treatment team, have a clear understanding of the consequences if we do not uphold these Federal Laws. Your signing of this letter will indicate that you are aware of the Federal Laws regarding confidentiality and the consequences if you should reveal any information about any client without the proper release of information.

**The General Rule Prohibiting Disclosure:**
Except under certain specified conditions, the regulations prohibit the disclosure of records or other information concerning any client without the proper consent form signed by client to give the program permission to release said specific information. (Federal Code 2.12, 2.3 (a) (CFR 42 & HIPPA)

This prohibition on unauthorized disclosure applies whether or not the person seeking information already has the information, has other means of obtaining it, enjoys official status, has obtained a subpoena or warrant, or is authorized by state law. (Federal Code 2.13, (b), 2.20). Any state provision that would permit or require a disclosure prohibited by the federal rules is invalid. However, some states may require greater confidentiality than the federal regulations (Federal Code 2.20). Any violations to this law could bring a breach of confidentiality law suit against the *employee* or the corporation. Any *employee* found to be violating client's confidentiality can be *terminated immediately*.

I acknowledge that during the course of performing my assigned duties I may have access to, use, or disclose confidential health information. I hereby agree to handle such information in a confidential manner at all times during and after my employment and commit to the following obligations:

A. I will use and disclose confidential health information only in connection with and for the purpose of performing my assigned duties
B. I will request, obtain or communicate confidential health information only as necessary to perform my assigned duties and shall refrain from requesting, obtaining or communicating more confidential health information than is necessary to accomplish my assigned duties
C. I will take reasonable care to properly secure confidential health information on my computer and will take steps to ensure that others cannot view or access such information. When I am away from my workstation or when my tasks are completed, I will log off my computer or use a password-protected screensaver in order to prevent access by unauthorized users.
D. I will not disclose my personal password(s) to anyone without the express written permission of my department head or record or post it in an accessible location and will refrain from performing any tasks using another's password

I understand that as an employee, the use and disclosure of patient information is governed by the rules and regulations established under HIPAA, the Health Insurance Portability and Accountability Act of 1996, and related policies and procedures. Therefore, with regard to patient information, I commit to the following additional obligations:

A. I will use and disclose confidential health information solely in accordance with the federal regulations clinic policies set forth above or elsewhere. I also agree to familiarize myself with any periodic updates or changes to such policies in a timely manner.
B. I will immediately report any unauthorized use or disclosure of confidential health information that I become aware of to the appropriate supervisor using the reporting procedure provided at the company's website.

I also understand and agree that my failure to fulfill any of the obligations set forth in this Agreement and/or my violation of any terms of this Agreement shall result in my being subject to appropriate disciplinary action, up to and including, termination of employment.

PRINTED NAME: _Tiffany Terry_  EMP #: _9088_

SIGNATURE: _Tiffany Terry_  DATE: _12/22/2013_

WITNESS: _____

**EXHIBIT 3**



## Search Incorporations, Cooperatives, Banks and Insurance Companies

Printer Friendly Version

LLC Member information is now confidential per Act 865 of 2007

Use your browser's back button to return to the Search Results

**Begin New Search**

For service of process contact the Secretary of State's office.

| | |
|---|---|
| Corporation Name | ARC REHABILITATION CENTER, P.A. |
| Fictitious Names | |
| Filing # | 811133744 |
| Filing Type | For Profit Corporation |
| Filed under Act | Dom Bus & Prof Corp; 958 of 1987 & 155 of 1963 |
| Status | Good Standing |
| Principal Address | |
| Reg. Agent | STEPPIG & ASSOCIATES, LLC. |
| Agent Address | 1 LILE COURT, SUITE 103 |
| | LITTLE ROCK, AR 72205 |
| Date Filed | 05/17/2017 |
| Officers | THOMAS F ROBINSON M.D., Incorporator/Organizer |
| Foreign Name | N/A |
| Foreign Address | |
| State of Origin | N/A |

**Purchase a Certificate of Good Standing for this Entity**    **Pay Franchise Tax for this corporation**

EXHIBIT
4



**Tiffany Anderson-Keck**

55 mins · 🐾

I try to do my best to help people everyday, but sometimes, it just doesn't matter. Today, my previous employer, who I left because of instability and poor management and ownership, decided to call me TWO MONTHS after I left their company to tell me that I am the piece of shit because their business is struggling to keep their heads above water. I usually don't do this, but it makes me feel good so 1) it's not my fault that your business is failing 2) grow up. I have moved on. I work with a new company that is TRULY dedicated to helping others and is drama free 3) I offered advice on how to save your company, you didn't want it and I vowed to never work for a company I didn't believe in 4) start listening to your employees because I am tired of them calling me every time they hate you for the same reasons I did 5) don't hire family- never works out well for anybody 6) lastly, but most importantly, if you would start focusing on the important things in your business, a) your employees wouldn't leave and it wouldn't be so hostile and unstable b) your patients would see that you care and c) your business wouldn't be struggling. However, I must thank you because you have only showed me how I much I truly meant to you, since 60 days after leaving, you are STILL calling me. Although you didn't show it, I now know I was needed. MAYBE (doubt it), it will cause you to open your eyes and stop with the high school drama and focus on how to improve your business before another one comes around and rightfully takes it from you. Patient care

EXHIBIT

5

tabbies®

every time they hate you for the same reasons I did 5) don't hire family- never works out well for anybody 6) lastly, but most importantly, if you would start focusing on the important things in your business, a) your employees wouldn't leave and it wouldn't be so hostile and unstable b) your patients would see that you care and c) your business wouldn't be struggling. However, I must thank you because you have only showed me how I much I truly meant to you, since 60 days after leaving, you are STILL calling me. Although you didn't show it, I now know I was needed. MAYBE (doubt it), it will cause you to open your eyes and stop with the high school drama and focus on how to improve your business before another one comes around and rightfully takes it from you. Patient care should ALWAYS come first, as does treating your employees respectfully. Not money, greed, and drama. You're welcome for all of the hard work I put in. I can assure you, I have learned a lot from mistakes you all have made at your company, and for that I am grateful. I will be sure to utilize that where I'm at now...

PS. If anyone is interested in a job, there are many other suboxone programs opening and another methadone program opening in Bryant. Apply away because YOU ARE WORTH HAVING A BETTER JOB where you feel appreciated! Don't complain if you're not willing to do something about it!

 Stephanie Moore and 10 others          6 Comments

 Like           Comment



•••○○ AT&T LTE    7:53 AM

Maybe: Nikki

**New Contact info** found
Nikki add...

Hi it's Nikki from Arkansas
Recovery Clinic in Little Rock.
We are a new suboxone
program that is soon looking to
start taking insurance. We are
approximately 60 days away
from accepting all forms of
insurance (fingers crossed).
Until then we are $200 per
month, and for every person
you refer that makes and keeps
an appointment, you get $25
off of that. Our address is 1 Lile
CT suite 103 Little Rock, AR,
72205. And our phone number
is 501-400-7504. We do not
force you to taper and your
price includes counseling and
all labs and screens. Once we
are accepting insurance, we
will back date a claim for you
for reimbursement. We have Dr.
Thomas Robinson available to
see patients on tue, wed, and

Text Message

**EXHIBIT**

6



**ARKANSAS**
**SECRETARY OF STATE**
*Mark Martin*

## *Search Incorporations, Cooperatives, Banks and Insurance Companies*

Printer Friendly Version

LLC Member information is now confidential per Act 865 of 2007

Use your browser's back button to return to the Search Results

Begin New Search

For service of process contact the Secretary of State's office.

| | |
|---|---|
| Corporation Name | CSCB REHABILITATION MANAGEMENT GROUP, LLC. |
| Fictitious Names | ARC REHABILITATION CENTER |
| Filing # | 811127814 |
| Filing Type | Limited Liability Company |
| Filed under Act | Domestic LLC; 1003 of 1993 |
| Status | Good Standing |
| Principal Address | 12555 GULF FREEWAY, SUITE B HOUSTON, TX 77034 |
| Reg. Agent | STEVEN CLEMENT |
| Agent Address | 127 WHITEWOOD |
| | SHERWOOD, AR 72120 |
| Date Filed | 03/15/2017 |
| Officers | PRINCIPAL ONE , Incorporator/Organizer |
| Foreign Name | N/A |
| Foreign Address | |
| State of Origin | N/A |

**Purchase a Certificate of Good Standing for this Entity**       **Pay Franchise Tax for this corporation**

EXHIBIT

7

bibbles'



 Sign Up

Email or Phone
Password
Log In
Forgot account?

## Addiction Recovery Care of Little Rock
@LRARC

- Home
- Services
- Reviews
- Photos
- Posts
- About
- Community

Create a Page

Like | Recommend

### Services

**Physician Appointment**
Dr. Thomas Robinson, MD
Please call to inquire.

**Medication Management**
Meet with Doctor to discuss medication regimen th...
Please call to inquire.

**Drug Screening**
Screening done at least once monthly
Please call to inquire

See All

### Reviews

5.0 1 Review

Tell people what you think

See All

### Posts

**Addiction Recovery Care of Little Rock** shared a link.
August 11 at 5:01pm ·

Like Comment Share

**Addiction Recovery Care of Little Rock**
August 11 at 4:37pm ·

We are currently accepting new patients to see Dr. Thomas Robinson. Please call 501-400-7504 to schedule your appointment! Referrals are appreciated!

Like Comment

Drug Addiction Treatment Center in Little Rock, Arkansas
5.0 · Open Now

**Community** See All
29 people like this
29 people follow this

**About** See All

1 Life Court Suite 103
Little Rock, Arkansas, AR 72205
(501) 400-7504
Contact Addiction Recovery Care of Little Rock on Messenger
www.addictionrc.com
Drug Addiction Treatment Center · Addiction Resources Center · Counselor
Hours 8:00AM - 5:00PM
Open Now

**People**

29 likes

**People Also Like**

Laurel's Alibis
Bar

Jacksonville Friends of the Anim...
Animal Shelter

EXHIBIT
tabbies
8

**ARC**

HOME    OPIOID DEPENDENCY TREATMENT    ADDICTION COUNSELING    CONTACT US

# Addiction Recovery Care

Get your life back! Affordable Suboxone therapy for opiate addiction is our specialty. Addiction Recovery Care is an outpatient facility where we ease patients through the recovery process from addiction. We specialize in the confidential treatment of patients in both the physical and psychological aspects of addiction. Our experienced staff will develop a results based individualized treatment plan for you based on your addiction history and your specific needs.

Call the clinic or send us an e-mail, using fields to the right. We can help and it's confidential.

**Houston Texas**
12555 Gulf Freeway
Houston, TX 77034
Phone: 713-322-6060
Fax: 713-322-6059

**Little Rock Arkansas**
1 Lile Court, Suite 103
Little Rock, AR 72205
Phone: 501-400-7504
Fax: 501-400-7599

**Name**

**First**

**Last**

**Email**

SUBMIT

## Identifying Opioid Dependency

Opioid dependence can happen to anyone. Certain drugs commonly prescribed for pain may lead to dependence, even when the drugs are taken as prescribed. These drugs, including heroin are known as opioids. Opioids are powerful narcotic drugs that can be highly effective at treating pain, yet also highly addictive.

Have you or anyone you know had three or more of the following experiences in the last 12 months? If so, you or your loved one may be opioid dependent.

- Having to increase your drug dosage to reach the same effect
- Experiencing withdrawal symptoms when not using
- Persistently trying to stop using, unsuccessfully
- Spending a lot of time and money obtaining drugs
- Prioritizing drugs over family, friends and work
- Associating yourself more with other users and less with those who don't use
- Continuing to use despite negative consequences
- Manipulating and deceiving in order to feed the habit



### We are accepting new patients

All calls and inquires are kept strictly confidential

All visits are by appointment only

*Refer a friend and get a $25 referral fee towards your next appointment*

**12555 Gulf Frwy, Suite B**
**Houston, Texas 77034**
**Phone: 713-322-6060**
**Fax: 713-322-6059**

**1 Lile Court, Suite 101**
**Little Rock, AR 72205**
**Phone: 501-400-7504**
**Fax: 501-400-7599**

*Please visit our website for more information*

*www.addictionrc.com*

# WE CAN HELP YOU



# QUALITY ADDICTION
## Medical Care

Addiction Medicine Care is committed to providing high quality and affordable medication-assisted addiction therapy to our patients. Our mission is to ensure that patients feel they are being addressed with empathy, respect and support. We specialize in the confidential treatment of patients in both the physical and psychological aspects of addiction. Our experienced staff will develop and individualized treatment plan for the patient based on addiction history and specific needs.

*Takes Ins!*

tabbies®

EXHIBIT
9

## How Do I Treat ... ly
### Opioid Dependen...

Our program offers various flexib... ...uling op-
portunities Monday through Satur... ...on admis-
ion, patients undergo an extensive assessment,
conducted by a physician, addressing both the psy-
hological and physical aspects of his/her addiction.
This includes a urinalysis, blood analysis and a preg-
ancy test for females.

Following the assessment, patients may undergo a
doctor supervised induction in the clinic to ensure a
normal reaction to the medication by the patient.

...fter their first appointment, patients are required
to schedule a follow up visit to ensure the dos-
age of medication is appropriate for the patients
...afety, and if necessary dosage may be adjusted to
...lleviate any discomfort that patients may experi-
nce. This may be one to two weeks after the initial
appointment, based on the physician's discretion.

...atients will then be required to schedule follow up
appointments every 28 days to ensure progression
...ithin the program. Counseling is required as part
...f the treatment plan.

...fter several months, as per physician's recom-
...endation, patients will be gradually tapered off of
...edication by lowering the daily dosage until pa-
...ents no longer require medication. At this stage
counseling is still strongly recommended to keep
watch for any signs of relapsed.



### Counseling



It is estimated that patients taking medication
for opioid dependence or substance abuse have
a 25% rate of retention, and with one-to-one
counseling one's chances of success increase to
80%. Therefore, counseling plays a vital role and
an integral part of your process of maintaining a
sober life. With psychological support, patients
can learn to use coping mechanisms to mini-
mize the risk of relapse due to triggers that are
associated with past dependencies.

## How Our C... ...1 ...N

...K5

...ARE

### ALL PATIENTS ...
### REQUIRED TO F...
### COUNSELING

To aid in your success a Licensed Independent
Chemical Dependency Counselor (LICDC) works
with the patient to provide an individualized
assessment and therapy program. Services
offered include: education, individual, group,
couples, and family codependency counseling
sessions. Free counseling is available to all A.M.C
patients. Ask a staff member regarding appoint-
ment availability.

### In-House Counseling
### Available at
### Selected Locations

