IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

CATAR CLINIC OF HOT SPRINGS, LLC
& STOCKTON MEDICAL GROUP, LTD                    PLAINTIFFS/
                                                COUNTER-DEFENDANTS


VS.                      NO.  4:17-CV-520-DPM


THOMAS F. ROBINSON, M.D., TIFFANY
TERRY, ARKANSAS RECOVERY CLINIC,
ARC REHABILITATION CENTER, P.A.,
CSCB REHABILITATION MANAGEMENT
GROUP, LLC, ADDICTION RECOVERY
CARE OF LITTLE ROCK, ARC CLINIC &
JANE DOE #1                                      DEFENDANTS
                                                COUNTER-PLAINTIFFS


## COUNTERCLAIM

Comes Counter-Plaintiffs, Thomas F. Robinson, M.D., Tiffany Terry, Arc Rehabilitation Center, P.A., and CSCB Rehabilitation Management Group, LLC, by and through their attorney, Richard E. Worsham, and for their Counterclaim against Counter-Defendants, Catar Clinic of Hot Springs, LLC and Stockton Medical Group, LTD, states:

### JURISDICTION AND VENUE

1.     Thomas F. Robinson (hereinafter referred to as "Dr. Robinson"), who is licensed to practice medicine in the State of Arkansas, is an Arkansas citizen and a resident of Pulaski County, Arkansas.

1

2.      Tiffany Terry (hereinafter referred to as "Terry") is an Arkansas citizen and a resident of Garland County, Arkansas.

3.      Arc Rehabilitation Center, P.A. (hereinafter referred to as "ARC") is a professional association organized under the laws of the State of Arkansas with its principal place of business in Pulaski County, Arkansas.

4.      CSCB Rehabilitation Management Group, LLC (hereinafter referred to as "CSCB") is a limited liability company organized under the laws of the State of Arkansas and doing business in Pulaski County, Arkansas.

5.      Catar Clinic of Hot Springs, LLC (hereinafter referred to as "Catar") is a limited liability company organized under the laws of the State of Arkansas with its principal place of business in Garland County, Arkansas.

6.      Stockton Medical Group, Ltd (hereinafter referred to as "Stockton") is a corporation organized under the laws of the State of Arkansas with its principal place of business in Pulaski County, Arkansas.

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over the Counter-Defendants since they operate businesses in the State of Arkansas and have already subjected themselves to the jurisdiction of the Court by the filing of a complaint herein.

9.      Venue is proper pursuant to 28 U.S.C. § 1391.

### WRONGFUL DISCHARGE (TERRY AGAINST CATAR AND STOCKTON)

10.     Terry was an employee of Catar from December 20, 2013 to March 1, 2017 and an employee of Stockton until July 13, 2017, when she was forced to resign based upon the intolerable work conditions at Catar and Stockton.

11.     During her term of employment with Catar and Stockton, Terry had an expectation of continued employment based upon the statements and acts of Catar, Stockton, their agents, officers and employees.

12.     During her employment with Catar and Stockton, Stockton entered into a contractual relationship with Dr. Lonnie Parker which resulted in Dr. Parker working in the clinic with Terry.

13.     It was discovered by Terry that Dr. Parker had been convicted in May 2000 of possessing child pornography in the United States District Court of Arkansas, Eastern District.

14.     The sadistic or masochistic nature of the crime committed by Dr. Parker is evidenced through the statement made by the Court of Appeals, which states that the "images at issue depict the following acts (among others) being inflicted upon minor female children: sexual penetration by a minor girl upon herself by using a large carrot, forced oral sex, an adult male ejaculating into the face and open mouth of a crying baby, and adult males standing over and urinating in the face of a female child." *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001).

15.     To further compound the problem of Terry having to work with a convicted sex offender, Catar and Stockton installed a video camera in a bathroom used by patients and their family.

16.     The action of Catar and Stockton, in the use of the video camera is a potential violation of A.C.A. § 5-16-101, which states, in pertinent part:

> a)  It is unlawful to use any camera, videotape, photo-optical, photoelectric, or any other image recording device for the purpose of secretly observing, viewing, photographing, filming, or videotaping a person present in a residence, place of business, school, or other structure, or any room or particular location within that structure, if that person:
>
>> (1)  Is in a private area out of public view;
>>
>> (2)  Has a reasonable expectation of privacy; and
>>
>> (3)  Has not consented to the observation.

Catar and Stockton knew or should have known that the use of the video camera created a risk of a criminal violation and could lead to the arrest of its employees.

17.     Catar and Stockton also entered into a contract with Dr. Miguel Augustine Casillas which resulted in Dr. Casillas working in the clinic with Terry.

4

18.   It was discovered by Terry that on December 19, 2014, the Arkansas State Medical Board entered an Order and Notice of Hearing alleging that Dr. Casillas had violated various regulations relating to engaging in a romantic or sexual relationship with a former patient. A Consent Order was entered which formally reprimanded Dr. Casillas and required him to take a boundaries course and to pay the Arkansas Board its costs of investigation.

19.   Obviously, the boundaries course Dr. Casillas participated in did not correct the issue because he continued to make sexual comments to and in front of Terry.

20.   Catar and Stockton created such intolerable working conditions, as evidenced herein, that a reasonable person would be compelled to resign.

21.   Terry was forced to resign due to the intolerable working conditions and has incurred further intimidation and harassment from Catar, Stockton, their agents, officers, and employees because of her decision to resign.

22.   Terry has incurred actual damages as the direct result of the actions of Catar, Stockton, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

23.   The actions of Catar, Stockton, their agents, officers, and employees were willful and wanton, and therefore, Terry should be awarded punitive damages against Catar and Stockton.

24.     Terry should be awarded attorney fees and costs associated with this Count.

## FRAUD AND/OR MISREPRESENTATION

### (TERRY AGAINST CATAR AND STOCKTON)

25.     While working for Catar and Stockton, Terry indicated to Catar and Stockton that she wanted to become a Licensed Alcohol and Drug Abuse Counselor (LADAC).

26.     She had all the qualifications to be a LADAC but needed to work under the supervision of a LADAC for a period of 4000 hours and obtain a masters degree.

27.     Catar and Stockton indicated to Terry that she could work under the supervision of Ava Titsworth, who was an employee of Catar and Stockton.

28.     After working under the supervision of Ava Titsworth for more than the 4000 hours, Terry discovered that Ava Titsworth was not a registered LADAC clinical supervisor in the state of Arkansas.

29.     Catar and Stockton knew or should have known that Ava Titsworth was not a LADAC, registered LADAC clinical supervisor in the state of Arkansas, or even a licensed social worker.

30.     Catar and Stockton made the representation to Terry about working under the supervision of Ava Titsworth and knew or should have known the information was false.

31.     Catar and Stockton knew or should have known that Terry would rely upon the information about Ava Titsworth and made the false statement for the intent of inducing Terry to continue to work for Catar and Stockton.

32.     Terry relied upon the false statement about the credentials of Ava Titsworth.

33.     The reliance by Terry on the statement by Catar and Stockton was reasonable under the circumstances.

34.     Terry has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

35.     The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, Terry should be awarded punitive damages against Stockton and Catar.

36.     Terry should be awarded attorney fees and costs associated with this Count.

## TORT OF OUTRAGE

### (TERRY AGAINST CATAR AND STOCKTON)

37.     Terry was an employee of Catar from December 20, 2013 to March 1, 2017 and an employee of Stockton until July 13, 2017, when she was forced to resign based upon the intolerable work conditions at Catar and Stockton.

38.     During Terry's employment with Catar, Stockton began to oversee and direct the operation of Catar and its clinic.

39.     Stockton entered into a contractual relationship with Dr. Lonnie Parker which resulted in Dr. Parker working in the clinic with Terry.

40.     It was discovered by Terry that Dr. Parker had been convicted in May 2000 of possessing child pornography in the United States District Court of Arkansas, Eastern District.

41.     The sadistic or masochistic nature of the crime committed by Dr. Parker is evidenced through the statement made by the Court of Appeals, which states that the "images at issue depict the following acts (among others) being inflicted upon minor female children: sexual penetration by a minor girl upon herself by using a large carrot, forced oral sex, an adult male ejaculating into the face and open mouth of a crying baby, and adult males standing over and urinating in the face of a female child." *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001).

42.     To further compound the problem of Terry having to work with a convicted sex offender, Catar and Stockton installed a video camera in a bathroom used by patients and their family.

43.     The action of Catar and Stockton, in requiring the use of the video camera, is a potential violation of A.C.A. § 5-16-101, which states, in pertinent part:

a)  It is unlawful to use any camera, videotape, photo-optical, photoelectric, or any other image recording device for the purpose of secretly observing, viewing, photographing, filming, or videotaping a person present in a residence, place of business, school, or other structure, or any room or particular location within that structure, if that person:

(1)  Is in a private area out of public view;

(2)  Has a reasonable expectation of privacy; and

(3)  Has not consented to the observation.

Catar and Stockton knew or should have known that the use of the video camera created a risk of a criminal violation and could lead to the arrest of Catar's and Stockton's employees.

44.    Catar and Stockton also entered into a contract with Dr. Miguel Augustine Casillas which resulted in Dr. Casillas working in the clinic with Terry.

45.    It was discovered by Terry that on December 19, 2014, the Arkansas State Medical Board entered an Order and Notice of Hearing alleging that Dr. Casillas had violated various regulations relating to engaging in a romantic or sexual relationship with a former patient.  A Consent Order was entered which formally

reprimanded Dr. Casillas and required him to take a boundaries course and to pay the Arkansas Board its costs of investigation.

46.     Obviously, the boundaries course Dr. Casillas participated in did not correct the issue because he continued to make sexual comments to and in front of Terry.

47.     Catar and Stockton created such intolerable working conditions, as evidenced herein, that a reasonable person would be compelled to resign.

48.     Terry was forced to resign due to the intolerable working conditions and has incurred further intimidation and harassment from Catar, Stockton, their agents, officers, and employees because of her decision to resign.

49.     Stockton and Catar, by and through its agent and employees, continued the harassment of Terry by the filing of a complaint against Terry with the Social Work Licensing Board. A copy of the complaint is attached hereto as **Exhibit "A"** and made a part hereof as if set forth word for word.

50.     The complaint before the Social Work Licensing Board was intended to interfere with Terry's ability to obtain a permanent license as a social worker.

51.     The complaint before the Social Work Licensing Board included statements by Stockton and Catar which were false and misleading.

52.     Stockton and Catar contacted the Social Work Licensing Board a second time and provided more information about Terry and the pending litigation.

A copy of the supplemental response to the Social Work Licensing Board is attached hereto as **Exhibit "B"** and made apart hereof as if set forth word for word.

53.     Stockton and Catar had already interfered with Terry's ability to obtain a LADAC license based upon false information that prevented her from completing the work under the supervision of a LADAC clinical supervisor registered in the state of Arkansas for a period of 4000 hours.

54.     Stockton, Catar, their agents, officers, and employees went on a mission to ruin the professional and personal reputation of Terry, and to strip Terry of her ability to earn a living.

55.     Stockton, Catar, their agents, officers, and employees have intentionally inflicted severe emotional distress on Terry based upon their extreme and outrageous conduct.

56.     Terry has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

57.     The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, Terry should be awarded punitive damages against Stockton and Catar.

58.     Terry should be awarded attorney fees and costs associated with this Count.

## Defamation (Terry against Stockton and Catar)

59.     Stockton, Catar, their agents, officers, and employees filed a complaint against Terry with the Social Work Licensing Board. A copy of the complaint is attached hereto as **Exhibit "A"** and made a part hereof as if set forth word for word.

60.     Stockton, Catar, their agents, officers, and employees contacted the Social Work Licensing Board a second time and provided more information about Terry and the pending litigation.  A copy of the supplemental response to the Social Work Licensing Board is attached hereto as **Exhibit "B"** and made apart hereof as if set forth word for word.

61.     The documents filed by Stockton, Catar, their agents, officers, and employees with the Social Work Licensing Board contain false and defamatory statements.

62.     Stockton, Catar, their agents, officers, and employees knew or should have known that the documents contained false and defamatory statements.

63.      Stockton, Catar, their agents, officers, and employees have made false and defamatory statements to other individuals, including but not limited to, patients who know Terry.

64.     Stockton, Catar, their agents, officers, and employees knew or should have known that the defamatory statements about Terry were false.

65.     Terry has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

66.     The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, Terry should be awarded punitive damages against Stockton and Catar.

67.     Terry should be awarded attorney fees and costs associated with this Count.

### INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

### (DR. ROBINSON AGAINST STOCKTON)

68.     Dr. Robinson had a contract with Catar to provide treatment to substance abuse patients in the clinics located in Hot Springs and Little Rock.

69.     The contract between Dr. Robinson and Catar was entered into on or about December 1, 2014 and was terminated by Catar on or about March 2017.

70.     During this time period, Stockton began to oversee and direct the operation of the clinics.

71.     Stockton, its agents, officers, and employees began a systematic plan which would, and did in fact, lead to the termination of Dr. Robinson's contract by Catar.

72.     Among the specific events that lead to the termination of the contract, Stockton, its agents, officers, and employees instigated an investigation of Dr. Robinson by the DEA by making false statements about Dr. Robinson's practice of prescribing drugs to patients.

73.     Although Dr. Robinson was able to show that the allegations were false and no action was taken by the DEA or the Arkansas State Medical Board, Catar terminated its contract with Dr. Robinson.

74.     Dr. Robinson has incurred actual damages as the direct result of the actions of Stockton, its agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

75.     The actions of Stockton, its agents, officers, and employees were willful and wanton, and therefore, Dr. Robinson should be awarded punitive damages against Stockton.

76.     Dr. Robinson should be awarded attorney fees and costs associated with this Count.

## INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

## (DR. ROBINSON AGAINST STOCKTON AND CATAR)

77.     Dr. Robinson had a contract with Catar to provide treatment to substance abuse patients in the clinics located in Hot Springs and Little Rock.

78.     The contract between Dr. Robinson and Catar was entered into on or about December 1, 2014 and was terminated by Catar when they shut down their practice on or about March 1st, 2017. He continued to work thereafter for Stockton without a contract until his termination on July 27, 2017.

79.     During this time period, Dr. Robinson developed a doctor-patient relationship with numerous individuals that visited the clinic for substance abuse issues.

80.     This doctor-patient relationship went beyond the mere administration of treatment medications relating to individual's substance abuse issues, which Dr. Robinson performed under the terms of the contract with Catar.

81.     After the termination of the contract by Catar, there has been a calculated effort by Stockton, Catar, their agents, officers, and employees to interfere with the doctor-patient relationships, created by Dr. Robinson, during the term of his contract.

82.     Stockton, Catar, their agents, officers, and employees have intentionally taken actions to discourage Dr. Robinson's patients from contacting him or receiving medical treatment from Dr. Robinson.

83.     Stockton, Catar, their agents, officers, and employees have intentionally and without justification withheld medical records of Dr. Robinson's patients as a means to prevent Dr. Robinson from treating his patients.

84.   Under the provisions of HIPAA, Stockton, Catar, their agents, officers, and employees are required to release the medical records within thirty (30) days of a request by another medical provider. 45 CFR 164.524.

85.   Stockton, Catar, their agents, officers, and employees violated HIPAA by refusing to timely release the medical records of specific patients upon the request of Dr. Robinson and ARC.

86.   Dr. Robinson has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

87.   The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, Dr. Robinson should be awarded punitive damages against Stockton and Catar.

88.   Dr. Robinson should be awarded attorney fees and costs associated with this Count.

### INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (DR. ROBINSON AGAINST STOCKTON AND CATAR)

89.   Dr. Robinson had a contract with Catar to provide treatment to substance abuse patients in the clinics located in Hot Springs and Little Rock.

90.   The contract between Dr. Robinson and Catar was entered into on or about December 1, 2014 and was terminated by Catar in March, 2017.

91.    During this time period, Dr. Robinson developed a doctor-patient relationship with numerous individuals that visited the clinic for substance abuse issues.

92.    This doctor-patient relationship went beyond the mere administration of treatment medications relating to individual's substance abuse issues, which Dr. Robinson performed under the terms of the contract with Catar.

93.    After the termination of the contract by Catar, there has been a calculated effort by Stockton, Catar, their agents, officers, and employees to interfere with the doctor-patient relationships, created by Dr. Robinson, during the term of his contract.

94.    Stockton, Catar, their agents, officers, and employees have intentionally taken actions to discourage Dr. Robinson's patients from contacting him or receiving medical treatment from Dr. Robinson.

95.    Stockton, Catar, their agents, officers, and employees have intentionally taken actions to prevent former patients from knowing the whereabouts of Dr. Robinson, and have provided misleading and false statements to the former patients about Dr. Robinson.

96.    The actions of Stockton, Catar, their agents, officers, and employees have not only prevented former patients from contacting Dr. Robinson, but have

prevented any referrals Dr. Robinson would have received from former patients and their families.

97.    Dr. Robinson has dedicated himself to the providing the utmost care and treatment for his patients which has resulted in substantial goodwill between Dr. Robinson and his patients and their families.

98.    Just like most physicians, Dr. Robinson relies upon referrals to develop and continue his practice.

99.    Stockton, Catar, their agents, officers, and employees have intentionally interfered with the ability of Dr. Robinson to receive referrals from former patients and their families.

100.    Dr. Robinson has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

101.    The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, Dr. Robinson should be awarded punitive damages against Stockton and Catar.

102.    Dr. Robinson should be awarded attorney fees and costs associated with this Count.

### DEFAMATION (DR. ROBINSON AGAINST STOCKTON AND CATAR)

103.   Stockton, its agents, officers, and employees made false and defamatory statements about Dr. Robinson to the DEA about Dr. Robinson's practice of prescribing drugs to patients.

104.   Dr. Robinson was able to show that the allegations were false and no action was taken by the DEA or the Arkansas State Medical Board.

105.   Stockton, Catar, their agents, officers, and employees have made false and defamatory statements about Dr. Robinson to former and present patients of Dr. Robinson.

106.   Stockton, Catar, their agents, officers, and employees knew or should have known that the statements made to the DEA and the former and present patients of Dr. Robinson were false.

107.   Dr. Robinson has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

108.   The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, Dr. Robinson should be awarded punitive damages against Stockton and Catar.

109.   Dr. Robinson should be awarded attorney fees and costs associated with this Count.

**TORT OF OUTRAGE (DR. ROBINSON AGAINST STOCKTON AND CATAR)**

110.   Stockton, its agents, officers, and employees made false and defamatory statements about Dr. Robinson to the DEA about Dr. Robinson's practice of prescribing drugs to patients.

111.   Dr. Robinson was able to show that the allegations were false and no action was taken by the DEA or the Arkansas State Medical Board.

112.   Being aware that Dr. Robinson had been previously reported to the DEA about his prescription practice, Stockton, Catar, their agents, officers and employees used or allowed another physician to use Dr. Robinson's DEA number to prescribe drugs to patients.

113.   Stockton, Catar, their agents, officers and employees, although they claim that their computer system is secure, permitted someone to access the information on the computer and generate prescriptions under Dr. Robinson's DEA number.

114.   Stockton, Catar, their agents, officers and employees are fully aware of the issues that can be created for Dr. Robinson with DEA and the unauthorized use of his DEA number, but took no action to remove Dr. Robinson's information from its computer system or prohibit access to the information.

115.   Under information and belief, Stockton, Catar, their agents, officers, and employees intentionally allowed the use of Dr. Robinson's DEA number, after

his termination date and the date of the filing of this lawsuit, in order to create legal issues for Dr. Robinson.

116.   Dr. Robinson has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

117.   The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, Dr. Robinson should be awarded punitive damages against Stockton and Catar.

118.   Dr. Robinson should be awarded attorney fees and costs associated with this Count.

## VIOLATION OF 15 USC § 1125

### (ARC AGAINST STOCKTON AND CATAR)

119.   15 USC § 1125 creates a cause of action for the making of a false or misleading statement to harm a business.  This code provision states:

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of

origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A)
>
> is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B)
>
> in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

120.   Stockton, Catar, their agents, officers, and employees have made false and defamatory statements about ARC to individuals who seek substance abuse treatment.

121.   Stockton, Catar, their agents, officers, and employees knew or should have known that the statements were false and would damage the business of ARC.

122.   The statements made by Stockton, Catar, their agents, officers, and employees were made in commerce and has damaged the business in commerce of ARC.

123.   ARC has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial and should be awarded any statutory damages.

124.   The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, ARC should be awarded punitive damages against Stockton and Catar.

125.   ARC should be awarded attorney fees and costs associated with this Count.

## INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

## (ARC AGAINST STOCKTON AND CATAR)

126.   ARC retained the services of Dr. Robinson who had developed a relationship with numerous patients and their families based upon his years of dedication to the medical field.

127.   Stockton, Catar, their agents, officers, and employees have participated in an endeavor to strip Dr. Robinson of all the goodwill he has acquired over the years with his patients and their families.

128.   Stockton, Catar, their agents, officers, and employees have made false and misleading statements about Dr. Robinson and about ARC for the purpose of damaging the business of ARC

129.   ARC has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

130.   The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, ARC should be awarded punitive damages against Stockton and Catar.

131.   ARC should be awarded attorney fees and costs associated with this Count.

## DEFAMATION (ARC AGAINST STOCKTON AND CATAR)

132.   Stockton, Catar, their agents, officers, and employees are determined to damage the business of ARC and eliminate any competition from ARC.

133.   Stockton, Catar, their agents, officers, and employees have made false and misleading statements about ARC for the purpose of damaging the business of ARC.

134.   Stockton, Catar, their agents, officers, and employees knew or should have known that the statements were false.

135.   ARC has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

136.   The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, ARC should be awarded punitive damages against Stockton and Catar.

137.   ARC should be awarded attorney fees and costs associated with this Count.

## VIOLATION OF 15 USC § 1125

## (CSCB AGAINST STOCKTON AND CATAR)

138.   15 USC § 1125 creates a cause of action for the making of a false or misleading statement to harm a business.  This code provision states:

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of

origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A)

is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)

in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

139.  Stockton, Catar, their agents, officers, and employees have made false and defamatory statements about CSCB to individuals who seek substance abuse treatment.

140.   Stockton, Catar, their agents, officers, and employees knew or should have known that the statements were false and would damage the business of CSCB.

141.   The statements made by Stockton, Catar, their agents, officers, and employees were made in commerce and has damaged the business in commerce of CSCB.

142.   CSCB has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial and should be awarded any statutory damages.

143.   The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, CSCB should be awarded punitive damages against Stockton and Catar.

144.   CSCB should be awarded attorney fees and costs associated with this Count.

## INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (CSCB AGAINST STOCKTON AND CATAR)

145.   ARC retained the services of Dr. Robinson who had developed a relationship with numerous patients and their families based upon his years of dedication to the medical field.

146.   CSCB has a business relationship with ARC and any damage to the business of ARC is also damaging to the business of CSCB.

147.   Stockton, Catar, their agents, officers, and employees are aware of the business relationship between CSCB and ARC and that any damage to the business of ARC would be damaging to the business of CSCB.

148.   Stockton, Catar, their agents, officers, and employees have participated in an endeavor to strip Dr. Robinson of all the goodwill he has acquired over the years with his patients and their families.

149.   Stockton, Catar, their agents, officers, and employees have made false and misleading statements about Dr. Robinson and about ARC for the purpose of damaging the business of ARC and causing damage to the business of CSCB.

150.   CSCB has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

151.   The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, CSCB should be awarded punitive damages against Stockton and Catar.

152.   CSCB should be awarded attorney fees and costs associated with this Count.

**DEFAMATION (CSCB AGAINST STOCKTON AND CATAR)**

153.   Stockton, Catar, their agents, officers, and employees are determined to damage the business of CSCB and eliminate any competition from CSCB.

154.   Stockton, Catar, their agents, officers, and employees have made false and misleading statements about CSCB for the purpose of damaging the business of CSCB.

155.   Stockton, Catar, their agents, officers, and employees knew or should have known that the statements were false.

156.   CSCB has incurred actual damages as the direct result of the actions of Stockton, Catar, their agents, officers, and employees and should be compensated for such damages in the amount proven at trial.

157.   The actions of Stockton, Catar, their agents, officers, and employees were willful and wanton, and therefore, CSCB should be awarded punitive damages against Stockton and Catar.

158.   CSCB should be awarded attorney fees and costs associated with this Count.

159.   Dr. Robinson, Terry, ARC, and CSCB request a jury trial on the issues set forth in the counterclaim.

WHEREFORE, Counter-Plaintiffs, Thomas F. Robinson, M.D., Tiffany Terry, Arc Rehabilitation Center, P.A., and CSCB Rehabilitation Management

Group, LLC, respectfully request that they be awarded damages against the Counter Defendants, Catar Clinic of Hot Springs, LLC and Stockton Medical Group, LTD, together with all other just and proper relief.

/s/ Richard E. Worsham
Richard E. Worsham (ABN 89020)
Attorney for Defendants
320 Executive Court, Suite 306
Little Rock, AR 72205
(501) 228-0668
richard.worsham@worshamlawfirm.com

## CERTIFICATE OF SERVICE

I certify that on this 12th day of October, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.


/s/Richard E. Worsham
Richard E. Worsham