IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CATAR CLINIC OF HOT SPRINGS,
LLC, and STOCKTON MEDICAL                              PLAINTIFFS/
GROUP, LTD.                                     COUNTER-DEFENDANTS

v.                          No. 4:17-cv-520-DPM

THOMAS F. ROBINSON, M.D.; TIFFANY
TERRY; ARKANSAS RECOVERY CLINIC;
ARC REHABILITATION CENTER, P.A.;
CSCB REHABILITATION MANAGEMENT
GROUP, LLC; ADDICTION RECOVERY
CARE OF LITTLE ROCK; ARC CLINIC;
and JANE DOE #1                                         DEFENDANTS

THOMAS F. ROBINSON, M.D.; CSCB
REHABILITATION MANAGEMENT
GROUP, LLC; and TIFFANY TERRY       COUNTER-PLAINTIFFS

ORDER

**Background.** Some three months ago this Court held a third hearing on preliminary matters in the case. Chase Steppig appeared to show cause why, on Catar's* motion, he should not be held in contempt of this Court's orders about keeping patient information confidential. Michael Casillas also appeared. The Court ordered him and Catar to

---

* The Court will use this shorthand for both plaintiffs, Catar and Stockton.

show cause why, in the circumstances, they shouldn't be estopped to complain about Steppig's actions. The Court's Order convening the hearing and giving notice is № 79. Some unexpectedly tangled evidentiary issues—about prior criminal charges against Steppig—arose at the hearing. The Court took those issues, plus the merits on contempt and estoppel, under advisement. The press of other matters has prevented the Court from digging back into this case until now. Other disputes have arisen in the meantime. There are proposed new pleadings; there are lawyer issues; and there are some scheduling challenges. This Order aims to address all pending matters.

**Evidentiary Issues.** Catar's counsel relied on several exhibits while questioning Steppig at the December 2017 hearing. Appendix A lists the Steppig-related exhibits and the Court's final ruling on the admissibility of each. The contested exhibits center on three recent episodes when Steppig was charged with crimes.

First, the Court disregards everything about Steppig's November 2017 arrest. Exhibits 14 and 15 are excluded. There's been no conviction; the underlying conduct is irrelevant to Steppig's credibility; and, most importantly, this event is (with a minor exception about an undisputed fact) irrelevant to the contempt issues. FED. R. EVID. 401, 608(b), & 609.

Second, Steppig pleaded guilty in 2016 to felony insurance fraud in Texas state court. Catar argues that his plea, Exhibit 16, comes in

-2-

under Rule 609(a)(2) as a conviction involving dishonesty. This is a strong argument but the circumstances are peculiar. The Texas court noted the guilty plea, finding that it was knowing, voluntary, and made with the advice of competent counsel. The state court, though, never found Steppig guilty of insurance fraud. Instead, there was a deferred adjudication, a period of supervision, and then a July 2017 discharge — which specifically said that the court had not adjudicated Steppig guilty. See the next-to-last page of Exhibit 16.

The lack of a judicial finding of guilt casts doubt on whether a Rule-609-qualifying conviction occurred. *See generally* 28 CHARLES ALAN WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE § 6133 at 224–27 (2d ed. 2012). The surer path is to treat Steppig's guilty plea as a prior act that illuminates his truthfulness. FED. R. EVID. 608(b). Catar's counsel was allowed to (and did) question Steppig about the plea; but counsel must take Steppig's answers as they came, and cannot supplement those answers with the proposed extrinsic evidence. *Ibid*; *United States v. Martz*, 964 F.2d 787, 789 (8th Cir. 1992).

Third, Steppig was arrested in 2015 and indicted in 2016 for falsely holding himself out as a lawyer. Exhibit 18. These incidents fall squarely within Rule 608(b). They're prior acts — not convictions — that go to Steppig's truthfulness. And because they aren't convictions, they're beyond Rule 609's reach regardless of whether the charges were expunged. The Court therefore denies Steppig's motion to file the

expungement records under seal, and excludes Catar's proffered expungement petition, Exhibit 20. Those documents are unnecessary. FED. R. EVID. 403.

**Contempt and Estoppel.** Based on all the exhibits and all the testimony at the December 2017 hearing, including an evaluation of each witness's credibility, the Court finds these facts.

- Casillas had mixed motives in reporting Terry to the Social Work Licensing Board.

The NASW Code of Ethics says that "[w]hen necessary, social workers who believe that a colleague has acted unethically should take action through appropriate formal channels (such as contacting a state licensing board . . . )." Exhibit 22 at § 2.10(d). Casillas believed Terry had taken confidential patient information from Catar and was using that information to drum up business for her new employer. Fulfilling his ethical obligations, however, was not the only thing that prompted Casillas to act. Catar's business was threatened. And Casillas made the Board complaint right after Catar filed this case, while it was seeking a preliminary injunction, and while all counsel were working toward an order to keep patient information confidential. The Board complaint was also intended to be a second front against the new competitor clinic. Catar made a concerted effort to gather the witness statements. Then, through Casillas, it deployed them. Casillas's testimony that he acted only because of his ethical obligations was not credible.

- Casillas believed that the Social Work Licensing Board would keep patients' identities confidential.

Casillas so testified. The Court believes him. Plus he relied on the advice of his lawyers.

- The Social Work Licensing Board has kept the patient information confidential.

The Board provided copies of Casillas's complaint (including the patient statements) to Steppig because he said he was acting for and with Terry in responding to the report. There is no evidence that the Board routinely discloses, or makes public, patient identifying information.

- Steppig has filed a complaint against Casillas with the Social Work Licensing Board.

This was undisputed.

- Steppig learned about patient Doe's identity, occupation, and treatment during the sealed portion of the preliminary injunction hearing held on 31 August 2017 and 1 September 2017. That was his only source for those facts.

At the hearing, Doe appeared and identified himself, his occupation, his employer, and the fact that he was a patient of Catar. Steppig did not know any of these facts before the hearing. Steppig and Terry received a copy of Casillas's complaint to the Board about Terry after the hearing.

- Steppig realized at the hearing that Doe could not be licensed in his occupation while receiving the medication prescribed through Catar.

Steppig so testified. The Court believes him.

- After the injunction hearing, and after getting a copy of Casillas's Board complaint against Terry, Steppig investigated the patients (including Doe) who made statements to Catar about contacts from Terry and others.

Steppig so testified. He described his research and hiring a private investigator.

- Steppig reported Doe to his professional licensing board in September 2017.

This was undisputed.

- Steppig did not report Doe to protect public health.

The Court does not believe Steppig's contrary testimony. Clinics with which Steppig is involved treat patients from all walks of life, including licensed professions. Steppig has never before been involved in a patient-related report to a professional licensing board. Steppig's clinics have made reports to state agencies to prevent child endangerment.

- Steppig reported Doe to respond in kind to Casillas's report about Terry to the Social Work Licensing Board.

Terry is a key employee for Steppig at the new clinic. He believed she was under an unfair attack. Her license to be a social worker is at risk. He has helped, and is helping, her respond in the Board proceeding.

- Steppig reported Doe partly because Doe's testimony supported Catar against Steppig's business and Terry in this case.

The Court makes this finding based on all the material circumstances.

- Steppig reported Doe to send a message that testimony supporting Catar could cost a witness personally.

The Court makes this finding based on all the material circumstances. Among the similarly situated patients, Doe was the only one who testified. He was the only one who suffered consequences.

- Before making his complaint, Steppig verified some relevant information about Doe from public sources.

This fact is true, but does not shield Steppig. There was no public source about Doe's treatment by Catar. Steppig learned about this treatment at the injunction hearing.

- Steppig knew about the parties' joint motion to seal, № 28, and the Court's responding Order, № 30, sealing confidential patient information.

Steppig testified that he was familiar with these papers. He also testified that he understood the Court's intention to protect patients' identities. He testified that he understood that the Court ordered non-disclosure of that information. Steppig's testimony that this Court's Orders did not cover medical information, or bar disclosure of medical information, is not credible. Steppig is a businessman experienced in the healthcare industry. He knew how sensitive treatment information is. And he knew the Court intended to prevent disclosure of these

patients' identities *and* their treatment.

- Steppig believed that, because he located some publicly available information about Doe after the hearing, he could disclose Doe's treatment to the licensing board.

He so testified.

- Doe's treatment by Catar was not publicly available information.

This was undisputed.

- Steppig knew about the Court's November 2017 hearing on the motion for contempt, but did not attend.

Steppig so testified. It was undisputed that, based on unrelated circumstances, he could not attend.

These are the Court's conclusions of law.

- Catar is not estopped to seek a contempt citation.

Catar's tactical choice to go after Terry's license, through Casillas, while pursuing the sealing order, dirties the Plaintiffs' hands a bit. But, this conduct is not so inequitable that it bars Catar's contempt motion. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245–46 (1933). Instead, it's part of a no-holds-barred offense against a competitor.

- The evidence does not support a contempt citation for Steppig's non-attendance at the November 2017 hearing.

Catar did not get good service on Steppig. He knew about the motion and the hearing. He was elusive as Catar tried to serve him. But, in the event, he could not appear in this Court on that day.

- The evidence clearly and convincingly establishes that Steppig violated the Court's sealing Order in his report about Doe to the licensing board.

The Court's Order was clear. Steppig knew the restrictions imposed. The fact that some information about Doe could be found in the public record after the hearing does not wash Steppig's actions. Doe's treatment was not public; it was confidential until Steppig reported it.

- The Court cites Steppig for civil contempt.

In frustration and anger about the Social Work Licensing Board proceedings against Terry, Steppig willfully violated this Court's sealing Order by using protected health information against a witness whose testimony was unfavorable to the Defendants and favorable to the Plaintiffs. *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 505–08 (8th Cir. 2000).

Catar has modified its motion, and now seeks no finding of criminal contempt from this Court. № 95 at 3–4. The Court agrees that, in these circumstances, it should focus on future compliance. The Court declines Catar's request for a criminal referral, either by this Court directly or by Catar with this Court's authorization. The parties' dispute does not need yet another front.

- To ensure future compliance with the Court's directions that confidential patient health information must be protected, the Court enters the Protective Order below — with more specifics, to avoid any uncertainty in the parties' multi-front dispute, and with a required bond from CSCB Rehabilitation Management Group, LLC and ARC Rehabilitation Center, P.A. to guarantee compliance by those entities and associated persons, including Steppig.

This dispute is particularly contentious. The parallel proceedings before the Social Work Licensing Board add complexity. More clarity about the scope of non-disclosure obligations can only help. The patient information involves sensitive matters. While the Court's existing Order on the parties' joint motion should have been sufficient in the circumstances, where everyone had acknowledged the need to protect this patient health information, an additional incentive for compliance is necessary. At bottom, the parties' dispute is about money. A bond — which puts money on the line, and makes that money subject to forfeiture for future violations of patient confidentiality — will provide that incentive.

**Protective Order.** No party shall use a patient's protected health information for any purpose other than treating the patient and pursuing claims, and making defenses, in this case in this Court. Every officer, agent, and employee of each party is bound by this Order. Protected health information is confidential. It must not be disclosed. Protected health information is all information covered by HIPPA, 42

U.S.C. § 1320d-6, HIPPA's implementing regulations, and ARK. CODE ANN. § 23-76-129. This Protective Order extends to any record (in any form or medium) that contains protected health information. A party must, insofar as practicable, redact protected health information from any document filed with the Court. If redaction is impracticable, a party may move to file under seal, giving reasons (document by document) why a sealed filing is necessary.

This Protective Order does not prevent Tiffany Terry, Michael Casillas, and Chase Steppig from using patients' protected health information in the two currently pending matters before the Social Work Licensing Board: Casillas's complaint against Terry; and Steppig's complaint against Casillas. Any such use must comply with all Board rules and procedures about confidentiality. Terry, Casillas, and Steppig must not disclose any patient's protected health information to the public as part of those Board proceedings. And each of them must take every reasonable step to maintain the confidentiality of patients' protected health information during the Board proceedings. Those steps include (but are not limited to) redacting protected health information where possible, filing materials under seal, and requesting non-public proceedings.

CSCB Rehabilitation Management Group, LLC and ARC Rehabilitation Center, P.A. must post one $25,000 bond with the Clerk of this Court by 13 April 2018. The bond may be cash, any cash

equivalent (such as a CD), an irrevocable letter of credit, or a promise with sufficient third-party surety. The Court will evaluate and approve or disapprove any proposal. The bond is subject to forfeiture, in whole or in part, if CSCB, ARC, or any officer, employee, or agent of those entities violates the terms of this Protective Order.

**Lawyer Issues.** Richard Worsham originally acted as counsel for Dr. Robinson and the five entity defendants. *E.g.*, № 16. He later became Tiffany Terry's lawyer, too. № 36. At Worsham's request, the Court relieved him as counsel for Terry and Dr. Robinson, who have since retained new lawyers. № 114 & № 132. New counsel have also appeared for CSCB Rehabilitation Management Group, LLC. № 125 & № 127. The motion to substitute John B. Buzbee and Joel W. Price as counsel for CSCB is granted. This week, new counsel also appeared for ARC Rehabilitation Center, P.A. After further study of the record, the Court agrees that Arkansas Recovery Clinic, Addiction Recovery Care of Little Rock, and ARC Clinic are all fictitious entities, which don't need separate counsel. № 7-1 & № 37 at 2. Worsham's renewed motion is granted. He is relieved, with the Court's thanks, as counsel in this case.

**New Pleadings.** Catar's timely motion to amend its complaint is granted with a caveat. The law generally favors amendments. FED. R. CIV. P. 15(a)(2). No party opposes Catar's proposal. All but one of the changes are helpful and clarifying updates. The exception is the

addition of Jill Cogburn as a new defendant. Her alleged role was revealed at the August/September hearing. It adds a variation on the core issue, alleged sharing of Catar patient information. The Court hesitates because a new party could derail the case. Thus the caveat: Catar must get good service on Cogburn by the end of March. If it does not, the Court will dismiss her without prejudice. If she is served as soon as possible, we should be able to keep the case on track.

Catar's motion to strike (1) Steppig's response about the proposed amendment and (2) Steppig's cross-complaint/third-party complaint is granted. Steppig individually is not a party to the whole case: the Court ordered him to respond on the contempt issues; and he has been fully heard on those issues. Steppig filed many papers and appeared at the December show-cause hearing, where he presented evidence and made arguments. Steppig is not a party, though, and he has no standing to file court papers for or against the parties or to assert individual claims.

Steppig moves to intervene, arguing that he has the right to do so. FED. R. CIV. P. 24(a). For two reasons, the Court disagrees.

First, Steppig's request is not timely within the meaning of Rule 24. *American Civil Liberties Union of Minnesota v. Tarek Ibn Ziyad Academy*, 643 F.3d 1088, 1093-94 (8th Cir. 2011); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998-99 (8th Cir. 1993). This case is half-way to trial. The issues were framed months ago. Steppig

has known about, and been involved in, this case from the start. No reason is given for his belated request to be a party. CSCB is a closely held entity—Steppig is the CS, another person is the CB. There's no need, as the Court will elaborate in a moment, for Steppig to be a party, too. Last, adding him would prejudice Catar, and all the parties, by adding more tangles to an already tangled case.

Second, CSCB and the ARC P.A. adequately represent Steppig's interests. *Mille Lacs*, 989 F.2d at 999–1002; *South Dakota ex rel. Barnett v. U.S. Department of the Interior*, 317 F.3d 783, 785 (8th Cir. 2003). He seeks to assert three claims against Catar, C.A.T.A.R., LTD., Stockton, and Michael Casillas. Like Steppig for CSCB, Casillas has been acting for his employer and related entities. These are his family's businesses. Casillas doesn't need to be a party individually. Next, with one exception, every new claim Steppig wants to make has already been made by another party. Terry is pursuing Catar for alleged defamation in the Social Work Licensing Board complaint. Dr. Robinson and ARC P.A. are claiming that Catar interfered with relationships between patients and the new clinic. And CSCB is claiming that Catar has violated the Lanham Act by making false statements about CSCB to prospective patients. *Compare № 46 at 12–18, 23–24, & 25–27, with № 120 at 5–9.*

Steppig's proposed "cross-complaint" also alleges a personal defamation claim. № 120 at 4–5. This seems new. Deep down, it is not.

- 14 -

Steppig says Catar (and Casillas) said defamatory things about him to the Social Work Licensing Board and to patients. But this is all part of the Catar/CSCB dispute, the parties' heated competition, Terry's actions, and the dueling petitions before the Board. The alleged harm is business related. The current new-clinic-related parties are a team. Steppig's LLC is a key member. Through that entity, he is too. Offensively and defensively, Steppig's personal interests have been and will be adequately advanced and defended.

**Scheduling.** The Court appreciates the parties' joint status report. This Order is designed to get this case back on track. Because of the Court's obligations in other cases, holding a status conference in the next few weeks is impracticable. The Final Scheduling Order, № 59, is amended. A new one will issue. The discovery period is extended to 1 June 2018. The Court directs simultaneous disclosure of experts (and their opinions) on 23 May 2018. The parties must confer now and schedule depositions in May. They must propound their written discovery by 30 March 2018. And the Court shortens the time for responding to written discovery to twenty calendar days. This case needs adjudication sooner rather than later.

\* \* \*

Catar's modified motion for contempt, № 49 & № 51, is partly granted and partly denied. Steppig's motion to file the expungement order under seal, № 102, is denied. Catar's motion to amend, № 117, is

granted with a caveat. Amended Complaint due by 20 March 2018. Please make good service on Cogburn as soon as possible and no later than 30 March 2018. Catar's motion to strike Steppig's response and cross-complaint, № 123, is granted. № 119 and № 120 are stricken. The motion to substitute counsel, № 126, is granted. Buzbee and Price are substituted for Worsham as counsel for CSCB and the fictitious entities to the extent CSCB is the one doing business through them. Steppig's motion to intervene, № 130, is denied. Worsham's renewed motion to be relieved, № 135, is granted. Brewer is substituted as counsel for Dr. Robinson, ARC Rehabilitation Center, P.A., and for the fictitious entities to the extent ARC is the one doing business through them. № 132 & № 134. Joint status report, № 136, addressed.**

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

16 March 2018

---

** The Court directs the Clerk to conform the docket to this Order. Delete Chase Steppig. Delete C.A.T.A.R., LTD. and Michael Casillas as third-party defendants. And delete Catar Clinic of Hot Springs LLC and Stockton Medical Group LTD. as cross-defendants. And, when the amended complaint is filed, add C.A.T.A.R., LTD. as a plaintiff and Jill Cogburn as a defendant.

# Appendix A

| Exhibit | Ruling |
| --- | --- |
| 14 – Franklin County District Court Certified Arrest Sheet | Excluded – Rules 401, 608(b), & 609 |
| 15 – Steppig Booking Detail (Franklin County) | Excluded – Rules 401, 608(b), & 609 |
| 16 – Steppig Insurance Fraud Plea Deal (Texas) | Excluded, but inquiry allowed on examination of an adverse witness – Rule 608(b) |
| 17 – *Chase Steppig v. Nationwide Insurance Company* pleadings (Pulaski County) | Not offered into evidence at 11 December hearing |
| 18 – Steppig Falsely Holding Himself Out as an Attorney Pleadings (Texas) | Excluded, but inquiry allowed on examination of an adverse witness – Rule 608(b) |
| 19 – *Financial Consultants of Arkansas, Inc. & Steppig v. Robins Insurance and Financial Services* Pleadings (Pulaski County) | Admitted at 11 December hearing without objection |
| 20 – Steppig Petition to Expunge (Texas) | Excluded – Rule 403 |
| 21 – Steppig Defamation Lawsuit (Texas) | Admitted at the hearing over objections |