IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| CATAR CLINIC OF HOT SPRINGS, LLC; STOCKTON MEDICAL GROUP, LTD.; AND C.A.T.A.R., LTD. | **PLAINTIFFS/ COUNTER-DEFENDANTS** |

**V.**       **CASE NO. 4:17-CV-520-DPM**

| | |
|---|---|
| THOMAS F. ROBINSON, M.D.; TIFFANY TERRY; ARKANSAS RECOVERY CLINIC; ARC REHABILITATION CENTER, P.A.; CSCB REHABILITATION MANAGEMENT GROUP, LLC; ADDICTION RECOVERY CARE OF LITTLE ROCK; ARC CLINIC; AND JILL COGBURN | **DEFENDANTS** |
| ARC REHABILITATION CENTER, P.A.; THOMAS F. ROBINSON, M.D.; CSCB REHABILITATION MANAGEMENT GROUP, LLC; AND TIFFANY TERRY | **COUNTER-PLAINTIFFS** |
| CHASE STEPPIG | **RESPONDENT** |

### SEPARATE DEFENDANTS' THOMAS F. ROBINSON, M.D. AND ARC REHABILITATION CENTESR, P.A.'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Come Separate Defendants Thomas F. Robinson, M.D. and ARC Rehabilitation Center, P.A. ("Defendants"), by and through their attorneys, Bryce Brewer with Bryce Brewer Law Firm, and Matthew R. House with James, House, Downing & Lueken, P.A., and for their above-entitled pleading state:

### Table Of Contents

I.   Undisputed Material Facts Regarding Ownership And Management Of The Plaintiff Corporations...............................................................................................3

II.   Undisputed Material Facts Regarding The Filing Of This Lawsuit In Federal Court .... 4

1

III.      Undisputed Material Facts Regarding The General Right And Freedom  Of Patients To See Whichever Physician They Desire ...………………………………………… 5

IV.      Undisputed Material Facts Regarding Plaintiffs' Adherence (Of Lack Thereof) To The Arkansas Patient Right To Know Act ……………………………………………… 6

V.       Undisputed Material Facts Regarding The Contracted Work Of Separate Defendant Thomas F. Robinson, M.D. ("Dr. Robinson") With "Catar Clinic" …………………….7

VI.      Undisputed Material Facts Regarding The Termination Of Dr. Robinson's Contract With "Catar Clinic" …………………………………………….…..................……... 10

VII.     Undisputed Material Facts Regarding Dr. Casillas' Views Of Dr. Robinson As A Physician ……………………………………………………………………………… 14

VIII.    Undisputed Material Facts Regarding Plaintiffs' Supposed Past And Future Loss Of Patients To Dr. Robinson ……………………………………………………...……16

IX.      Undisputed Material Facts Regarding Separate Defendant Chase Steppig ("Mr. Steppig") ……………………………………………………………………….17

X.       Undisputed Material Facts Regarding Plaintiffs' Claim In Count I Of The Amended Complaint Alleging Computer Fraud And Abuse (18 U.S.C. § 1030) ………………… 17

XI.      Undisputed Material Facts Regarding Plaintiffs' Claim In Count II Of The Amended Complaint Alleging Misappropriation Of Trade Secrets (18 U.S.C. § 1036(b))  ……... 18

XII.     Undisputed Material Facts Regarding Plaintiffs' Claim In Count III Of The Amended Complaint Alleging Breach Of Fiduciary Duty (Owed To Plaintiffs)……….. 19

XIII.    Undisputed Material Facts Regarding Plaintiffs' Claim In Count IV Of The Amended Complaint Alleging Tortious Interference With Business Expectancy/Contractual Relations ……………………………………………...…… 19

XIV.     Undisputed Material Facts Regarding Plaintiffs' Claim In Count V Of The Amended Complaint Alleging Tortious Interference With Prospective Advantage ………………20

XV.      Undisputed Material Facts Regarding Plaintiffs' Claim In Count VI Of The Amended Complaint Alleging Misappropriation Of Trade Secrets (Ark.Code Ann. § 4-75-606) …………………………………………………….. 24

XVI.     Undisputed Material Facts Regarding Plaintiffs' Claim In Count VII Of The Amended Complaint Alleging Outrage …………………………………………….... 25

XVII.    Undisputed Material Facts Regarding Plaintiffs' Claim In Count VIII Of The Amended Complaint Alleging Defamation ……………………………………… 26

XVIII.   Undisputed Material Facts Regarding Plaintiffs' Claim In Count IX Of The Amended Complaint Alleging Unjust Enrichment ………………..………………… 27

XIX.     Undisputed Material Facts Regarding Plaintiffs' Claim In Count X Of The Amended Complaint Alleging Computer Fraud & Trespass …………………………… 28

XX.      Undisputed Material Facts Regarding Plaintiffs' Claim In Count XI Of The Amended Complaint Alleging Civil Action By Crime Victim (Ark. Code Ann. § 16-118-107) ……………………………………………………………………….. 29

XXI.     Undisputed Material Facts Regarding Plaintiffs' Claim In Count XII Of The Amended Complaint Alleging A Civil Conspiracy …………………………………… 29

XXII.   Undisputed Material Facts Regarding Plaintiffs' Claim In Count XIII Of The
        Amended Complaint Alleging A Breach Of Contract ..................................... 31
XXIII.  Undisputed Material Facts Regarding Plaintiffs' Claim In Count XV Of The
        Amended Complaint Alleging Promissory Estoppel ..................................... 32
XXIV.   Undisputed Material Facts Regarding Plaintiffs' Claim In Count XVI Of The
        Amended Complaint Alleging Invasion Of Privacy ..................................... 32
XXV.    Undisputed Material Facts Regarding Plaintiffs' Claim In Count XVII Of The
        Amended Complaint Alleging Breach Of Fiduciary Duty (Owed To Patients) ....... 34
XXVI.   Undisputed Material Facts Regarding Plaintiffs' Claims For Damages ............... 34
XXVII.  Undisputed Material Facts Regarding Dr. Casillas' And Michael Casillas'
        Closing Thoughts In Their Deposition ................................................... 35

## I.   Undisputed Material Facts Regarding Ownership And Management Of The Plaintiff-Corporations

1.   The only party-Plaintiffs in this action are three corporate entities: (1) Catar Clinic of Hot Springs, LLC, (2) Stockton Medical Group, Ltd., and (3) C.A.T.A.R, Ltd.  There are no individual Plaintiffs.

2.   With that in mind, Miguel Casillas, M.D. ("Dr. Casillas") claimed to own fifty percent (50%) of Catar Clinic of Hot Springs, LLC with his ex-wife, Teresa Casillas ("Ms. Casillas"), who also allegedly owned 50%.  See Exhibit A to Motion For Summary Judgment ("Exhibit A"), Miguel Casillas, M.D. Deposition, Page 107, Lines 6-10.

3.   Stockton Medical Group, Ltd. and C.A.T.A.R., Ltd. are likewise purportedly owned by Dr. Casillas and Ms. Casillas, each owning fifty percent (50%).  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 107, Lines 15-20.

4.   Ms. Casillas was not involved in the day-to-day aspects of the business.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 108, Lines 12-14.

5.   She has lived in California for years, following her and Dr. Casillas' divorce.  See Exhibit E, Michael Casillas Deposition, Page 166, Lines 7-15.

6.     Rather, Michael Casillas was the Director of Operations and also served as Plaintiffs' Fed. R. Civ. P. 30(b)(6) corporate representative.  See Exhibit E, Michael Casillas Deposition, Page 7, Lines 13-15; Page 6, Lines 19-21.

7.     Michael Casillas was the son of Dr. Casillas and Ms. Casillas.  See Exhibit E, Michael Casillas Deposition, Page 61, Lines 18-21.

8.     Contrary to Dr. Casillas' testimony, Michael Casillas testified that Ms. Casillas did not have any ownership interest, and that Dr. Casillas owned all of the shares.  See Exhibit E, Michael Casillas Deposition, Page 166, Line 23 - Page 167, Line 6.

9.     Michael Casillas stated that he did not own any of the business and that his father was the only stockholder.  See Exhibit E, Michael Casillas Deposition, Page 7, Lines 9-12.

10.     Dr. Casillas is CEO, owner, and a physician.  See Exhibit E, Michael Casillas Deposition, Page 7, Lines 18-20.

11.     Michael Casillas said he will be leaving because he has a "different vision" than his father regarding how to run these clinics.  See Exhibit E, Michael Casillas Deposition, Page 185, Lines 18-21.

**II.**     **Undisputed Material Facts Regarding The Filing Of This Lawsuit In Federal Court**

12.     Dr. Casillas did not know why the Plaintiffs filed in federal court as opposed to state court. See Exhibit A, Miguel Casillas, M.D. Deposition, Page 108, Lines 22-25.

13.     Dr. Casillas concedes that the events that occurred all occurred within the State of Arkansas, and he is not alleging that any of the allegedly wrongful acts outside of the state of Arkansas.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 109, Lines 2-8.

4

14.     Dr. Casillas had "no knowledge as to when" the Plaintiffs' lawsuit was filed (on August 15, 2017) and also did not know when the discovery deadline was in this case (November 30, 2018, 3 days after his deposition on November 27, 2018).  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 109, Lines 9-15.

**III.       Undisputed Material Facts Regarding The General Right And Freedom Of Patients To See Whichever Physician They Desire**

15.     Dr. Casillas said that "patients were not slaves" and that "if a patient is assigned to a particular physician they don't become his property, and the next time they come for a visit for one reason or another they may see another doctor, another provider.  And a doctor doesn't own them."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 110, Line 23-Page 111, Line 6.

16.     The fact is that patients are free to see whichever doctor they would like, and as Dr. Casillas stated "if they no longer want to stay with the clinic or what have you, and want to see another doctor outside the clinic, fine."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 111, Lines 20-25.

17.     Indeed, Dr. Casillas agreed with the proposition that "a patient could see any doctor that was willing to treat them."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 112, Lines 1-4.

18.     Dr. Casillas agrees that "regular competition," where a physician develops business on their own, is okay and "no problem."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 112, Lines 13-15.

**IV.**      **Undisputed Material Facts Regarding Plaintiffs' Adherence (Or Lack Thereof) To The Arkansas Patient Right To Know Act**

19.      Dr. Casillas was asked about the Plaintiffs' application of the Arkansas Patient Right To Know Act in their practice.   Specifically, Dr. Casillas was asked "[i]f a physician leaves your employee [sic] and goes elsewhere and a patient wants to follow that doctor, are you under any obligation to inform the patient of where that doctor went?"  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 133, Line 23 - Page 134, Line 1.

20.      Michael Casillas confirmed that a patient has the right to choose and follow their own physician as well.  See Exhibit E, Michael Casillas Deposition, Page 163, Lines 3-5.

21.      The health care is provided by the individual physician rather than the clinic itself. See Exhibit E, Michael Casillas Deposition, Page 176, Lines 8-11.

22.      Unfortunately rather than comply with the Patient Right To Know Act, Dr. Casillas' answer was conditional as evidenced by his statement that:

> We will inform them if their physician leaves under good terms, we could inform the patient where he went. . . . there would be no problem if Dr. Robinson had told us, look I want to establish my own practice, I am going to quit my employment with you, I'm starting my own practice; and if any of his patients wanted to follow him, fine. But he didn't do that. . . . Under those circumstances I have all of the objections for a patient to go with him.

See Exhibit A, Miguel Casillas, M.D. Deposition, Page 134, Lines 2-19.

23.      Dr. Casillas agreed that patients are entitled to continuity of care with their healthcare providers.  See Exhibit A, Miguel Casillas, M.D., Page 188, Lines 1-9.  So did Michael Casillas.  See Exhibit E, Michael Casillas Deposition, Page 21, Lines 6-21.

24.      However, rather than the patient having the absolute right to be informed where their physician goes if he leaves for a new location, Dr. Casillas qualified that by saying "if they

6

requested it[.]"  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 189, Line 23-Page 190, Line 2.

25.     Michael Casillas' answer was also troubling, in that when asked if a patient had the right to know where their physician went if he was not with Plaintiffs anymore he responded "[t]hat's not our policy."  <u>See</u> Exhibit E, Michael Casillas Deposition, Page 20, Lines 1-10.

26.     Dr. Casillas is aware that the Arkansas Patient Right To Know Act essentially says that you have to let the patient know where the doctor went.  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 190, Lines 19-23.  Moreover, Dr. Casillas agreed that Plainitffs had an obligation to fully comply with that law.  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 190, Line 24-Page 191, Line 3.

27.     However, Michael Casillas, Plaintiffs' Director of Operations and Fed. R. Civ. P. 30(b)(6) corporate representative, was unaware of that law.  <u>See</u> Exhibit E, Michael Casillas Deposition, Page 163, Lines 17-24.

28.     Dr. Casillas was asked "[a]nd you agree that if Dr. Robinson violated that law, that he should be penalized under that law, correct?"  Notably Dr. Casillas stated "he didn't violate it. . . . There was no violation there."  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 191, Lines 4-10.

**V.       <u>Undisputed Material Facts Regarding The Contracted Work Of Separate Defendant Thomas F. Robinson, M.D. ("Dr. Robinson") With "Catar Clinic"</u>**

29.     Dr. Casillas stated that Dr. Robinson came to work for them as an independent contractor.  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 109, Line 21-Page 110, Line 23.

30.     Michael Casillas confirmed that Dr. Robinson was an independent contractor for Stockton Medical Group only.  See Exhibit E, Michael Casillas Deposition, Page 157, Lines 14-17.

31.     Exhibit B to Defendants' Motion For Summary Judgment ("Exhibit B") is "Catar Clinic's" November 18, 2014 Physician Services Agreement with Dr. Robinson.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 177, Lines 9-12.

32.     Michael Casillas confirmed that the contract does not say anything about Stockton at all.  See Exhibit E, Michael Casillas Deposition, Page 158, Lines 3-10.

33.     Dr. Casillas was not aware of any other document governing the contractual relationship with Dr. Robinson.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 113, Line 14 - Page 114, Line 8.

34.     Paragraph 17 of Exhibit B stated that "[t]his Agreement contains the entire understanding between Treatment Program and Physician with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, expressed or implied, oral or written except as herein contained."

35.     Notably "Catar Clinic" is not one of the named Plaintiffs in this lawsuit.

36.     Dr. Casillas did not know why there were three Plaintiffs in the lawsuit and while two of them have similar names, none of them are "Catar Clinic" which is the name used in the contract with Dr. Robinson.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 182, Lines 7-15.

37.     Dr. Casillas did not know whether or not Dr. Robinson or Separate Defendant ARC Rehabilitation Center, P.A. ("ARC") ever had a contract with Separate Plaintiff "Stockton Medical Group, Ltd."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 183, Lines 1-6.

38.     Michael Casillas confirmed that Dr. Robinson did not have a separate contract with Stockton. <u>See</u> Exhibit E, Michael Casillas Deposition, Page 159, Lines 16-25.

39.     Dr. Casillas also did not know whether or not Dr. Robinson or ARC ever had a contract with Separate Plaintiff "Catar Clinic of Hot Springs, LLC." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 183, Lines 20-24.

40.     Finally, Dr. Casillas did not know whether Dr. Robinson or ARC ever had a contract with Separate Plaintiff "Catar, Ltd." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 183, Lines 10-14.

41.     Rather, he conflated "Catar Clinic" with one or more of these entities. <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 183, Lines 10-19.

42.     With regard to the contract with Dr. Robinson in particular, Dr. Casillas was asked "So when we look at Exhibit 1 through Exhibit 8, which says that he has a contract with Catar Clinic, we just don't know which entity we're talking about, do we?" Dr. Casillas said "Maybe. It's probably the same one. It's just I don't know what Lyle Foster [his attorney] did, you know." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 183, Line 25-Page 184, Line 5.

43.     To Dr. Casillas' knowledge the contract was never modified or amended. <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 184, Lines 21-24. <u>See</u> <u>also</u> Exhibit B, Paragraph 17.

44.     In any event, Dr. Casillas agreed that while Dr. Robinson was obligated to comply with that contract, "Catar Clinic" was also required to comply with that contract. <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 114, Lines 14-17.

45.    Dr. Casillas did not know if "Catar Clinic" violated this contract such that it would excuse Dr. Robinson's compliance with the contract.   See Exhibit A, Miguel Casillas, M.D. Deposition, Page 114, Line 25-Page 115, Line 5.

**VI.**          **Undisputed Material Facts Regarding The Termination Of Dr. Robinson's Contract With "Catar Clinic"**

46.    Dr. Casillas admits that Dr. Robinson was let go by him and that his relationship with "Catar Clinic" was terminated by Dr. Casillas.   See Exhibit A, Miguel Casillas, M.D. Deposition, Page 115, Lines 8-12.

47.    According to Paragraph 3 of the contract reflected at Exhibit B, Dr. Robinson was an independent contractor of Catar Clinic and was not an employee.

48.    Moreover, Paragraph 3 of Exhibit B stated that "[n]othing contained in this Agreement shall be construed to create a partnership, a relationship of principal and agent, or a joint venture between the Treatment Program and Physician, nor to act as a general or special agent of the other Party in any respect or as to any specific matter, except as may be specifically set forth in this Agreement."

49.    Dr. Casillas admits that he did not give Dr. Robinson written notice of that termination, and rather "he was sitting right in front of me when I did it.   And he had about another 10 people in the room when it was done."   See Exhibit A, Miguel Casillas, M.D. Deposition, Page 115, Lines 10-17.

50.    However, Paragraph 1(b) of Exhibit B specifically required that written notice of termination be given by Plaintiffs to Dr. Robinson in the event of a termination.   Michael Casillas agreed with this as well.   See Exhibit E, Michael Casillas Deposition, Page 158, Line 17 - Page 159, Line 10.

10

51.     When asked whether Dr. Casillas gave Dr. Robinson any notification that he was going to be terminating his employment there, Dr. Casillas replied "you don't tell somebody that you're going to fire them. That's not a good business practice." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 115, Line 23 - Page 116, Line 1.

52.     Again however, Plaintiffs' contract with Dr. Robinson specifically required such notification. <u>See</u> Exhibit E, Michael Casillas Deposition, Page 158, Line 22 - Page 159, Line 10.

53.     Dr. Casillas admits that it did not comply with the contract by providing written notice.

54.     Exhibit C to Defendants' Motion For Summary Judgment ("Exhibit C") is a copy of a July 27, 2017 letter from Dr. Casillas, on behalf of "Stockton Medical Group," to Dr. Robinson. <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 178, Lines 18-21.

55.     It states that Dr. Robinson's "employment" was terminated effective immediately with "Stockton Medical Group." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 179, Lines 9-14.

56.     Again, Dr. Casillas did not know if Dr. Robinson even had a contract with Separate Plaintiff "Stockton Medical Group." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 177, Line 13 - Page 178, Line 9.

57.     Dr. Casillas also did not know whether or not Dr. Robinson received a termination letter similar to this on a "Catar Clinic" letterhead. <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 179, Line 25 - Page 180, Line 5.

58.     Regarding the reasons for terminating Dr. Robinson's contracted work, Dr. Casillas expressed in his deposition that one concern he had was that Dr. Robinson was

purportedly "stealing patients."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 117, Line 24.

59.     While Exhibit B (Dr. Robinson's contract with "Catar Clinic") contained a non-solicitation clause in Paragraph 10 with regard to the clinic's employees, notably it said nothing about clinic patients.

60.     Dr. Casillas had the most patients in the clinic, and Dr. Robinson had the second most patients.  See Exhibit E, Michael Casillas Deposition, Page 169, Lines 5-9.

61.     Dr. Casillas stated that "if [Dr. Robinson] had told us I'm quitting, I'm doing my own practice, fine.  If he announces I'm opening a practice or something, and a patient follows him, that's fine."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 113, Lines 2-4.

62.     The "stealing patients" allegation was based upon mere "rumors" from patients and employees that were purportedly told by other patients.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 120, Lines 3-5.

63.     For example, Dr. Casillas had "heard rumors that [Dr. Robinson] was trying to recruit patients to go with him.  There was a rumor that we were going to go bankrupt, we were going to close the clinic, and he was going to take all of the patients to his private clinic."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 119, Lines 17-21.

64.     Notably Dr. Casillas "didn't hear it directly from whoever reported it, because I was not there.  I get it by the third-party, or my second or third-party report."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 120, Lines 7-10.

65.     In fact, Michael Casillas confirmed that they had no evidence that Dr. Robinson solicited any current or former patients.  See Exhibit E, Michael Casillas Deposition, Page 202, Lines 10-13.

66.     Even though mere rumors were apparently sufficient to terminate Dr. Robinson, Plaintiffs hired a physician who was convicted in federal court of possession of child pornography, and he continues to work for them.  See Exhibit E, Michael Casillas Deposition, Page 44, Lines 9-20.

67.     Apparently they cannot even qualify to take insurance with this particular physician on the payroll.  See Exhibit E, Michael Casillas Deposition, Page 180, Lines 17-20.

68.     Michael Casillas confirmed that there were two incidents of sexual inappropriateness involving his father, Dr. Casillas, including one from their current office manager.  See Exhibit E, Michael Casillas Deposition, Page 10, Lines 2-25.

69.     Also, there was an allegation in Paragraphs 94-95 of Plaintiffs' Amended Complaint that "Dr. Robinson's office is willing to backdate insurance claims."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 124, Lines 5-7.

70.     But when Dr. Casillas was asked "what did you mean by backdating insurance claims?" he responded "I didn't mean anything because I didn't say that.  That allegation was made by, I think by the receptionists who were told by patients … that's just the hearsay that I got.  I didn't get it first-hand."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 124, Lines 8-19.

**VII.**     **Undisputed Material Facts Regarding Dr. Casillas' Views Of Dr. Robinson As A Physician**

71.     Dr. Casillas stated that Dr. Robinson was not "a bad doctor" and that, in his opinion, "he has [the] capacity to be a good doctor" and he is "a good doctor when he wants to be."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 120, Lines 14-17.

72.     Dr. Casillas offered that Dr. Robinson has "got a nice personality and I think he's compassionate." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 121, Lines 14-16.

73.     Michael Casillas also stated that Dr. Robinson cared about the patients "very, very much" and "[h]e's probably the practitioner [they] had that most cared about the patients[.]" See Exhibit E, Michael Casillas Deposition, Page 181, Lines 3-7.

74.     Other than summarily claiming that Dr. Robinson is a "greedy doctor," Miguel Casillas, M.D. Deposition, Page 120, Lines 17-20, Dr. Casillas had no other personal or professional criticisms of Dr. Robinson. See Exhibit A, Miguel Casillas, M.D. Deposition, Page 121, Lines 7-12.

75.     Michael Casillas did not fault Dr. Robinson for leaving to run a clinic where he could offer to see patients who had unlike health insurance, unlike Plaintiffs. See Exhibit E, Michael Casillas Deposition, Page 181, Lines 11-16.

76.     In fact, Michael Casillas confirmed that they lose business to providers who offer to take health insurance, and that loss of business is not due to any nefarious act. See Exhibit E, Michael Casillas Deposition, Page 181, Lines 20-25.

77.     "It's the consumer's choice," and "it's what [Michael Casillas] would do." See Exhibit E, Michael Casillas Deposition, Page 182, Line 2.

78.     Moreover, to Dr. Casillas' knowledge Dr. Robinson has never been deemed to have violated the ethical or professional standards of the American Medical Association, the Society of Addiction Medicine, or the Arkansas Medical Board. See Exhibit A, Miguel Casillas, M.D. Deposition, Page 185, Lines 8-12.

79.     Therefore Dr. Casillas was asked about Paragraph 95 of the Amended Complaint which discusses insurance fraud.  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 126, Lines 12-13.

80.     Specifically, with regard to the question of "are you claiming that Dr. Robinson or ARC Rehabilitation engaged in insurance fraud?[,]" Dr. Casillas stated "I am not alleging anything.  I don't know."  He simply had "no knowledge" and also never reported Dr. Robinson or ARC to the Arkansas Insurance Department.  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 126, Lines 14-19.

81.     Paragraph 189 of the Amended Complaint discussed how Dr. Robinson had supposedly chosen to provide "improper treatment."

82.     But when Dr. Casillas was asked "What was the improper treatment that Dr. Robinson allegedly provided?[,]" Dr. Casillas stated "I don't know.  I was not aware of any improper treatment." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 129, Lines 12-18.

83.     Dr. Casillas was informed that lawyers have rules of professional conduct, and he was asked whether there were any rules of medical conduct that were similar.  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 132, Lines 22-25.

84.     Dr. Casillas stated "I don't know.  The only thing I have is what's in the contract. And [Dr. Robinson] violated it.  That is the only thing I have.  I don't have anything outside that. <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 132, Line 25 - Page 133, Line 2.

85.     Accordingly, Dr. Casillas was asked "So other than the alleged violations of the contract that you had with Dr. Robinson, are you alleging that he violated any other ethical code?[,]" Dr. Casillas stated "I'm not.  I'm not alleging anything." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 133, Lines 3-6.

15

**VIII.**     **Undisputed Material Facts Regarding Plaintiffs' Supposed Past And Future Loss Of Patients To Dr. Robinson**

86.     At its essence Plaintiffs' case revolves around their claim that they purportedly lost clients to Dr. Robinson and anticipated losing additional patients.   See e.g., Amended Complaint, at ¶ 74.

87.     However, when Dr. Casillas was asked "so we're 15 months into this lawsuit and you've had a chance to go get some lunch . . . so do you have any way of telling us how many patients you have lost to Dr. Robinson?[,]" Dr. Casillas responded "I don't."   See Exhibit A, Miguel Casillas, M.D. Deposition, Page 122, Lines 8-12.

88.     When asked if anyone else knew he thought that his attorneys "might" know but he was "not aware" of anyone besides his attorneys.   See Exhibit A, Miguel Casillas, M.D. Deposition, Page 122, Lines 13-18.

89.     With regard to the question of how many additional patients Plaintiffs anticipated losing to Dr. Robinson in the future, Dr. Casillas stated that "I have no way of knowing" and therefore he was necessarily speculating.   See Exhibit A, Miguel Casillas, M.D. Deposition, Page 122, Line 22 - Page 123, Line 3.

**IX.**     **Undisputed Material Facts Regarding Separate Defendant Chase Steppig ("Mr. Steppig")**

90.     As this Court knows, much of the litigation, the Motions, and the hearings in this case have revolved around Mr. Steppig.   For example, the Court observed in its December 18, 2018 Order that Plaintiffs had expended an abundant amount of time on contempt issues rather than them actually trying to gather any evidence to support their claims against the Defendants.

91.     This is significant because when Dr. Robinson's counsel asked Dr. Casillas if Mr. Steppig had conspired with Dr. Robinson, Dr. Casillas barely knew who he was and in any event

16

ha no criticisms of him.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 123, Line 18-Page 124, Line 4 (Q "Did this guy over here conspire with Dr. Robinson? A "I've never seen him before.  Q "Do you even know his name?  A "Steppig." Q "Okay. A "But I only know him because they mentioned CSCB. I've never known him and I have nothing --- I don't think he came --- he was not in the equation at the time." Q "Right.  Do you have any criticisms of this gentleman right here?" A "No.  I have nothing to criticize him for.").

**X.**        **Undisputed Material Facts Regarding Plaintiffs' Claim In Count I Of The Amended Complaint Alleging Computer Fraud And Abuse (18 U.S.C. § 1030)**

92.    When Dr. Casillas asked "do you have any specific facts or evidence that Dr. Robinson or ARC Rehabilitation engaged in computer and fraud abuse?[,]"  Dr. Casillas stated "No.  I don't have any facts.  You can have suspicions but I don't have any facts."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 126, Line 23 - Page 127, Line 10.

93.    Michael Casillas also confirmed they had no evidence of computer fraud and abuse.  See Exhibit E, Michael Casillas Deposition, Page 142, Lines 8-14.

**XI.**     **Undisputed Material Facts Regarding Plaintiffs' Claim In Count II Of The Amended Complaint Alleging Misappropriation Of Trade Secrets (18 U.S.C. § 1036(b))**

94.     Michael Casillas conceded that they had no evidence that Dr. Robinson or ARC engaged in any misappropriation of trade secrets. See Exhibit E, Michael Casillas Deposition, Page 194, Lines 2-9.

95.     When Dr. Casillas was asked "Do you have any specific facts or evidence that Dr. Robinson or ARC engaged in any misappropriation of trade secrets?[,]" he stated "I don't know what they did. I mean, the trade secrets involved the amount of money, how it's allocated and how it's disbursed and how our business functions and how we were able to get the patients and then refer them over to the providers. Other than that, I don't know how they would do it." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 127, Lines 14-25.

96.     When asked again "Do you have any specific facts connecting Dr. Robinson or ARC to this alleged misappropriation of trade secrets?[,]" all that Dr. Casillas could muster was "I guess he's involved for the fact that he's a Defendant, you know, and he was fired for things that he shouldn't be doing, and what he was doing was stealing patients. So it's implied, but I don't have any direct evidence of it." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 128, Lines 1-9.

97.     Dr. Casillas admitted that he has no evidence that Dr. Robinson ever took any patient lists from Plaintiffs. See Exhibit A, Miguel Casillas, M.D. Deposition, Page 153, Lines 8-10.

98.     Michael Casillas, the Director of Operations, confirmed this as well. See Exhibit E, Michael Casillas Deposition, Page 108, Line 11 – Page 109, Line 7.

**XII.      Undisputed Material Facts Regarding Plaintiffs' Claim In Count III Of The Amended Complaint Alleging Breach Of Fiduciary Duty (Owed To Plaintiffs)**

99.     Dr. Casillas was asked, "Do you have any additional specific facts or evidence connecting Dr. Robinson or ARC to this alleged breach of fiduciary duties?"  See Exhibit A, Miguel Casillas, M.D., Page 128, Lines 10-15.  Dr. Casillas replied "No."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 128, Line 16.

100.    At that point Dr. Casillas' counsel objected to the form of the question, claimed that it called for a legal conclusion, and told him to "please state your answer again, Dr. Casillas."  At that point Dr. Casillas reiterated "No, I don't have any" facts or evidence connecting Dr. Robinson or ARC to a breach of fiduciary duties.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 128, Lines 17-22.

101.    Michael Casillas agreed that they did not have any evidence of Dr. Robinson or ARC engaging in a breach of fiduciary duties.  See Exhibit E, Michael Casillas Deposition, Page 191, Lines 3-10.

**XIII.     Undisputed Material Facts Regarding Plaintiffs' Claim In Count IV Of The Amended Complaint Alleging Tortious Interference With Business Expectancy / Contractual Relations**

102.    Michael Casillas confirmed that they did not have any evidence that Dr. Robinson or ARC engaged in tortious interference with business expectancy or contractual relations.  See Exhibit E, Michael Casillas Deposition, Page 191, Line 16 – Page 192, Line 10.

103.    Dr. Casillas was asked "do you have any specific facts or evidence connecting Dr. Robinson or ARC to this alleged tortious interference?"  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 128, Line 23 - Page 129, Line 4.  Dr. Casillas responded "Well, we did have a

19

contract with him and he broke it, that's the only fact I have." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 129, Lines 7-8.

104.    Dr. Casillas continued "There were requirements and specifics that he had to do and he violated them.  That's the only thing I have."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 129, Lines 7-11.

105.    One of Dr. Casillas' concerns related to statements that Plaintiffs' clinics were "not having enough money to continue, or [them] planning to close the clinic and the patients should go with [Dr. Robinson].  That's a false statement, and it's, you know, a lie." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 134, Lines 15-18.

106.    However, when Dr. Casillas was asked "Do you have any specific facts that Dr. Robinson made any of those statements?[,]" he responded that "I have hearsay from third parties that reported, and that were reported to me.  I don't have any first-hand knowledge, no."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 134, Lines 21-25.

**XIV.**    **Undisputed Material Facts Regarding Plaintiffs' Claim In Count V Of The Amended Complaint Alleging Tortious Interference With Prospective Advantage**

107.    Michael Casillas admitted that Plaintiffs had no evidence of tortious interference with prospective advantage.  See Exhibit E, Michael Casillas Deposition, Page 192, Lines 6-10.

108.    With regard to this claim, Dr. Casillas discussed what evidence he believed existed.  As reflected in his deposition, it appears to fall into two categories: (1) a Facebook post that he did not like, and (2) alleged illegal activity.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 136, Line 21 - Page 137, Line 1.  With regard to the Facebook post, it was Exhibit 5 to the Amended Complaint and is attached as Exhibit D to Defendant's Motion For Summary Judgment.

109.     Specifically, according to Dr. Casillas, this Facebook post was allegedly "defaming us" and "they were bad-mouthing us to our patients and they were saying that we didn't have the money, we were going to close, and that is interfering with that, yes." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 136, Line 21 - Page 137, Line 1.

110.     In fact, Michael Casillas confirmed that they did shut down and close part of their business. See Exhibit E, Michael Casillas Deposition, Page 156, Line 23 – Page 157, Line 2.

111.     The undated Facebook post at Exhibit D, allegedly authored by a "Tiffany Anderson-Keck," speaks for itself and states that:

> I try to do my best to help people everyday, but sometimes, it just doesn't matter. Today, my previous employer, who I left because of instability and poor management and ownership, decided to call me TWO MONTHS after I left their company to tell me that I am the piece of shit because their business is struggling to keep their heads above water. I usually don't do this, but it makes me feel good so 1) it's not my fault that your business if failing 2) grow up, I have moved on. I work with a new company that is TRULY dedicated to helping others and is drama free 3) I offered advice on how to save your company, you didn't want it and I vowed to never work for a company I didn't believe in 4) start listening to your employees because I am tired of them calling me every time they hate you for the same reasons I did 5) don't hire family – never works out well for anybody 6) lastly, but most importantly, if you would start focusing on the important things in your business, a) your employees wouldn't leave and it wouldn't be so hostile and unstable b) your patients would see that you care and c) your business wouldn't be struggling.  However, I must thank you because you have only showed me how much I truly meant to you, since 60 days after leaving you are STILL calling me.  Although you didn't show it, I now know I was needed. MAYBE (doubt it), it will cause you to open your eyes and stop with the high school drama and focus on how to improve your business before another one comes around and rightfully takes it from you.  Patient care should ALWAYS come first, as does treating your employees respectfully.  Not money, greed, and drama.  You're welcome for all of the hard work I put in.  I can assure you, I have learned a lot from mistakes you all have made at your company, and for that I am grateful.  I will be sure to utilize that where I'm at now …
>
> P.S.  If anyone is interested in a job, there are many other suboxone programs opening and another methadone program opening in Bryant.  Apply away because YOU ARE WORTH HAVING A BETTER JOB where you feel appreciated! Don't complain if you're not willing to do something about it!

21

112.    First, nowhere in this Facebook post is Dr. Casillas' name mentioned, or any of the names of the corporate party-Plaintiffs.

113.    Second, Dr. Casillas could not testify as to how many people "liked" (read and reacted to) the Facebook post.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 137, Lines 12-14.

114.    Third, Dr. Casillas could only connect the Facebook post to Separate Defendant Tiffany Terry, and he responded "No" with regard to the question of "Do you see Dr. Robinson's or ARC's name anywhere in this Facebook post?"  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 137, Lines 15-22.

115.    Further, with regard to the question of "Do you have any specific facts or knowledge that Tiffany wrote this Facebook post on behalf of Dr. Robinson or on behalf of ARC Rehabilitation?[,]"  Dr. Casillas admitted that the answer was "No."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 138, Lines 1-4.

116.    Dr. Casillas was not aware of any other Facebook posts that were made.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 138, Lines 5-7.

117.    In fact, interestingly Dr. Casillas was not even aware of this Facebook post until less than 24 hours before his deposition.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 138, Lines 7-9.  ("I mean, I wasn't aware of this one either until this morning, or until last night when I read the e-mail that was sent to me.")

118.    The second purported example of "interference" refers to what Dr. Casillas claims was illegal activity.  For example, certain allegations within Count V of the Amended Complaint referred to "kickbacks" which Dr. Casillas explained to mean "that the treating entity or the

22

treating clinic offers enticement to patients for referrals by paying them or giving them a discount. It's enticing them to a kickback." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 138, Lines 12-19.

119.    Dr. Casillas claimed that it was "illegal in many states" however he stated "I don't know if it's illegal in Arkansas but I think it's ethically improper, if not illegal." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 138, Lines 18-25.

120.    Even if it was not illegal, Dr. Casillas conceded that he never made a complaint to the Arkansas Medical Board about Dr. Robinson, and he does not know if anyone else did, and he is not aware of it. See Exhibit A, Miguel Casillas, M.D. Deposition, Page 139, Lines 16-19.

121.    Nor did he or anyone else he knows ever make a referral to any state or federal prosecutor about Dr. Robinson. See Exhibit A, Miguel Casillas, M.D. Deposition, Page 139, Lines 20-22.

122.    He was asked "why not if [Dr. Robinson] was engaged in illegal activities?[,]" and Dr. Casillas replied that "it's only an ethical, a problem with possibly the Medical Board. I don't think that we were required to do it. I didn't do it. And we had no insurance fraud involved, so there is nothing there, you know." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 139, Line 23 - Page 140, Line 2.

123.    Even though Dr. Casillas could not say that Defendants had engaged in any illegal activity, Dr. Casillas admitted in his deposition that his own clinics had engaged in illegal activity purportedly "without us being aware of it." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 186, Line 24 - Page 187, Line 3.

23

124.    Specifically, his clinics were receiving free specimen cups from a business "and then [his son] Michael found out it was illegal[.]"  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 186, Lines 19-23.

125.    The free specimen cups were from Discover Labs which then received the benefit of having the specimen sent to them in exchange for the free specimen cups.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 187, Lines 6-13.

**XV.    Undisputed Material Facts Regarding Plaintiffs' Claim In Count VI Of The Amended Complaint Alleging Misappropriation Of Trade Secrets (Ark. Code Ann. § 4-75-606)**

126.    With regard to Count VI of the Amended Complaint which alleges misappropriation of trade secrets under Arkansas law, just like the federal claim Michael Casillas confirmed that they did not have any evidence of Dr. Robinson or ARC engaging in a misappropriation that would violate state law.  See Exhibit E, Michael Casillas Deposition, Page 194, Lines 2-9.

127.    Dr. Casillas claimed that Dr. Robinson had knowledge of their "trade secrets" which Dr. Casillas defined as "knowledge of all our patients" and "access to the database that he could have downloaded and printed."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 140, Lines 6-11.

128.    Notably, however, Dr. Casillas conceded that "I don't know if [Dr. Robinson] did. I don't have any first-hand knowledge of him doing it, but that's a potential."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 140, Lines 11-13.

129.    Moreover, with regard to the question of "Do you know if anyone accessed that information on behalf of Dr. Robinson or ARC Rehabilitation?[,]" Dr. Casillas admitted "I have

no direct knowledge, no." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 141, Lines 3-5.

130.    Accordingly, with respect to the question of "[o]ther than what you've already testified to this morning or this afternoon, do you have any additional specific facts supporting your claim for misappropriation of trade secrets against Dr. Robinson or ARC Rehabilitation?[,]" Dr. Casillas had to answer "No." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 141, Lines 6-11.

## XVI.    <u>Undisputed Material Facts Regarding Plaintiffs' Claim In Count VII Of The Amended Complaint Alleging Outrage</u>

131.    With regard to Count VII of the Amended Complaint which discusses Plaintiffs' claim for outrage, also known as intentional infliction of emotional distress, Michael Casillas confirmed that they had no evidence that Dr. Robinson or ARC engaged in this. <u>See</u> Exhibit E, Michael Casillas Deposition, Page 126, Line 15 – Page 128, Line 25.

132.    As reflected by Plaintiffs' lawsuit there are no individual Plaintiffs and the only Plaintiffs are corporate entities.

133.    Presumably because Dr. Casillas is well-aware that corporations are not human beings and therefore do not have emotions, he stated that "[e]verybody in the organization sustained some emotional distress after finding out what happened and what we had to do.  It was not a pleasant thing to fire Dr. Robinson.  I liked him.  He was a good man." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 141, Lines 15-20.

134.    However, none of the persons in the organization that Dr. Casillas refers to are individual Plaintiffs in this action.

135.    Moreover, Dr. Casillas was unable to identify any emotional distress that was actually allegedly suffered.  Indeed, Dr. Casillas stated that "I think the mental anguish was more on the pocketbook than my emotions, you know."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 142, Lines 1-2.

136.    Accordingly, when asked "So are you going to claim for emotional distress?"  Dr. Casillas answered "I don't know.  That's --- I will have to defer that one to legal counsel as to what they recommend.  Usually most litigation involves mental suffering and stress and what have you, and that seems to be the rule rather than the exception in most legal action.  I'm not familiar that much with the legalities and procedures.  I defer that to my legal counsel as to what they want to do."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 142, Lines 3-11.

**XVII.**    **Undisputed Material Facts Regarding Plaintiffs' Claim In Count VIII Of The Amended Complaint Alleging Defamation**

137.    Michael Casillas conceded that they had no evidence that Dr. Robinson or ARC engaged in defamation.  See Exhibit E, Michael Casillas Deposition, Page 194, Line 25 – Page 195, Line 6.

138.    Dr. Casillas was asked what his "understanding of what defamation is" and he explained that "libel is lying about somebody else's reputation, doings, or what have you, to make them look bad."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 143, Lines 7-12.

139.    However, Dr. Casillas the stated that "in the case of Dr. Robinson, I have no evidence or any complaints of him libeling us.  I think he's a good man, and the only one that I saw doing libel was [Separate Defendant Tiffany] Terry."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 143, Lines 12-15.

140.   Indeed, throughout his deposition Dr. Casillas' criticisms seemed to be directed more toward Ms. Terry than Dr. Robinson or ARC Rehabilitation.  This is evidenced by Dr. Casillas' statement that "the majority of the complaints were on Terry, not so much Dr. Robinson, for patients.  He might have told them that he was moving or something like that but I am not aware of anything else that he told them, you know."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 143, Lines 20-24.

141.   Again, one of Plaintiffs' biggest complaints in this case has been the message depicted at Exhibit D, which was allegedly posted by Ms. Terry at some point.

142.   But when Dr. Casillas, the 50% owner of the Plaintiffs in this action, was asked about it, Dr. Casillas stated "this is the first time I've seen this.  I haven't seen it at all."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 125, Lines 9-23.

143.   More importantly, Dr. Casillas conceded that he did not have "any knowledge that Dr. Robinson or ARC Rehabilitation was in any way connected to this document" as he did not "know who wrote it."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 126, Lines 2-9.

144.   In fact, Dr. Casillas stated that "they signed themselves as Nikki.  Now, Nikki may be an alias, I don't know. … I don't know any Nikki."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 126, Lines 2-11.

**XVIII.**   **Undisputed Material Facts Regarding Plaintiffs' Claim In Count IX Of The Amended Complaint Alleging Unjust Enrichment**

145.   With regard to Count IX of the Amended Complaint alleging unjust enrichment, Michael Casillas admitted that they had no evidence that Dr. Robinson or ARC were unjustly enriched.  See Exhibit E, Michael Casillas Deposition, Page 195, Lines 7-15.

146.    Dr. Casillas explained that this was an allegation that Defendants "make money off of us, and inappropriately."  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 144, Lines 4-10.

147.    However, Dr. Casillas admitted that "I don't know if they made money because I think their overhead now far outweighs any money they made.  They're expensive."  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 144, Lines 10-13.

148.    When asked "[o]ther than what you've told us already in this deposition, do you have any additional specific facts or evidence that Dr. Robinson or ARC Rehabilitation were unjustly enriched by what they allegedly did?"  Dr. Casillas answered "No.  Everything that I've mentioned before is all.  I don't have any further."  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 145, Lines 3-4.

## XIX.        <u>Undisputed Material Facts Regarding Plaintiffs' Claim In Count X Of The Amended Complaint Alleging Computer Fraud & Trespass</u>

149.    Similar to Count I of the Amended Complaint alleging computer fraud and abuse under 18 U.S.C. § 1030, Dr. Casillas was asked "Do you have any additional specific facts or evidence that Dr. Robinson or ARC Rehabilitation engaged in computer fraud or trespass" as alleged in Count XX claiming a violation of Ark. Code Ann. § 5-41-103 and -104.  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 145, Lines 5-15.

150.    Dr. Casillas simply answered "No."  <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 145, Line 9-15.

**XX.**      **Undisputed Material Facts Regarding Plaintiffs' Claim In Count XI Of The Amended Complaint Alleging Civil Action By Crime Victim (Ark. Code Ann. § 16-118-107)**

151.     With regard to Count XI of the Amended Complaint, alleging a civil action by a purported crime victim, Michael Casillas stated that they had not evidence of criminal wrongdoing by Dr. Robinson or ARC.  See Exhibit E, Michael Casillas Deposition, Page 195, Line 16 – Page 196, Line 2.

152.     Dr. Casillas was asked "Do you believe that you or your companies were the victim of any crime?"  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 145, Lines 16-18.

153.     Dr. Casillas responded that "I think we are a victim of wrongdoing, whether it reaches the level of a crime is something for the legal profession to interpret."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 145, Lines 17-23.

154.     The fact is that Dr. Casillas could not identify any criminal offense whatsoever in which Defendants engaged.  Id.

155.     Michael Casillas also could not identify any criminal activity.  See Exhibit E, Michael Casillas Deposition, Page 195, Line 24 - Page 196, Line 2.

156.     Indeed, as discussed above regarding the failure of proof in Count V alleging tortious interference with prospective advantage, Dr. Casillas could not identify any illegal activity in which Defendants engaged.

**XXI.**      **Undisputed Material Facts Regarding Plaintiffs' Claim In Count XII Of The Amended Complaint Alleging A Civil Conspiracy**

157.     Michael Casillas conceded that they have no evidence of Dr. Robinson or ARC participating in a civil conspiracy to wrong the Plaintiffs.  See Exhibit E, Michael Casillas Deposition, Page 197, Lines 9-15.

158.    Dr. Casillas was asked "[w]ho do you specifically believe are the members of this civil conspiracy referred to in your Amended Complaint?"  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 146, Lines 1-3.

159.    He summarily claimed that "I think it would be the Defendants." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 146, Lines 1-8.

160.    But when Dr. Casillas was asked about Plaintiffs' allegation in Paragraph 89 of the Amended Complaint that "it has become apparent that other individuals and entities are conspiring with Dr. Robinson[,]" all Dr. Casillas could offer was that he suspected that allegation was "in reference to Tiffany and the nurse" but (1) he "can't remember her name" and (2) he did not even know if she went with Dr. Robinson.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 123, Lines 5-13.

161.    Dr. Casillas stated that those were "the only ones that I know" and "if there are some I am not aware of it."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 123, Lines 16-17.

162.    When asked whether he had revealed all of the facts that he believes made up the conspiracy that occurred, he simply deferred to the pleading and his attorneys and stated that "everything I think the, or most of what the attorneys alleged in this legal document.  That is what I believe."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 146, Lines 9-13.

163.    However, when asked whether he even "reviewed this Amended Complaint before it was filed" Dr. Casillas stated "No."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 146, Lines 16-18.

**XXII.**     **Undisputed Material Facts Regarding Plaintiffs' Claim In Count XIII[1] Of The Amended Complaint Alleging A Breach Of Contract**

164.    With regard to Count XIII alleging a breach of contract against the Defendants. Michael Casillas admitted that they had no evidence that Dr. Robinson breached his contract. See Exhibit E, Michael Casillas Deposition, Page 197, Lines 20-24.

165.    He also could not identify any damages that Plaintiffs had allegedly suffered from a breach of contract.  See Exhibit E, Michael Casillas Deposition, Page 197, Line 25 – Page 198, Line 16.

166.    Dr. Casillas conceded that Exhibit A is the only contract in question with regard to Dr. Robinson.  As to the question of "Is there any other contract that you believe Dr. Robinson or ARC have violated?" Dr. Casillas admitted "If there is, I am not aware of it at this time."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 147, Lines 4-8.

167.    Dr. Casillas was asked if the contract with Dr. Robinson had a non-compete provision and Dr. Casillas stated that it was purportedly in the contract.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 153, Lines 11-15.

168.    However, when pressed and asked if such provision was not in the contract then would there have been any non-compete agreement between him and Dr. Robinson, Dr. Casillas admitted "I don't know, to be truthful."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 153, Lines 11-22.

169.    Michael Casillas did not know either.   See Exhibit E, Michael Casillas Deposition, Page 187, Lines 17-21.

---

[1]
Count XIV alleged a claim for breach of contract against Ms. Terry only, and so no facts relating to that cause of action are discussed in this pleading.

170.     In fact, Exhibit B does not contain a non-compete or non-disparagement clause for Dr. Robinson, and merely contains a non-solicitation clause that extends only to the clinic's employees (as opposed to patients).

171.     Even if there was supposedly a breach of contract, Dr. Casillas was unable to articulate any damages that were suffered as a result of the breach of contract.

172.     Specifically, with regard to the question of "As we sit here today do you know how much money you are going to ask the jury to award you against Dr. Robinson for breach of contract?[,]" all that Dr. Casillas could muster in response was that "I will rely on my accountant and my attorneys and we'll come up with something that I think you'll --- maybe not --- it may not be the actual damages but it is something, you know." See Exhibit A, Miguel Casillas, M.D. Deposition, Page 147, Lines 12-19.

## XXIII.     Undisputed Material Facts Regarding Plaintiffs' Claim In Count XV Of The Amended Complaint Alleging Promissory Estoppel

173.     Michael Casillas agreed that they had no evidence that Dr. Robinson owed any duty to Plaintiffs based upon promissory estoppel. See Exhibit E, Michael Casillas Deposition, Page 202, Lines 19-24.  Nor could he identify any damages supporting a promissory estoppel claim.  See Exhibit E, Michael Casillas Deposition, Page 202, Line 25 – Page 203, Line 6.

174.     Dr. Casillas did not even know what promissory estoppel was.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 148, Lines 9-19.

## XXIV.     Undisputed Material Facts Regarding Plaintiffs' Claim In Count XVI Of The Amended Complaint Alleging Invasion Of Privacy

175.     With regard Count XVI of the Amended Complaint contending that Defendants engaged in an "invasion of privacy[,]" when Dr. Casillas was asked "whose privacy are you referring to in that Count?" he stated "I am not referring to anything.  I imagine it's the patient's

privacy but I'm not sure." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 148, Lines 21-23.

176.    More specifically, with regard to the question of "Do you believe that your privacy interest was in any way violated by Dr. Robinson or ARC Rehabilitation?[,]" Dr. Casillas answered "My privacy, no. Not mine."   <u>See</u> Exhibit A, Miguel Casillas, M.D., Page 148, Line 24 - Page 149, Line 2.

177.    All that Dr. Casillas could offer was that perhaps the privacy of the patients was invaded but not "me personally, no." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 149, Lines 14-17.

178.    Dr. Casillas was then asked "[s]o, are you going to claim damages on behalf of the patients?" Miguel Casillas Deposition, Page 149, Lines 24-25. Dr. Casillas answered "No. The damages will not be on behalf of the patients. . . . The answer is no." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 150, Lines 1-4.

179.    Dr. Casillas was subsequently asked "[s]o if the jury agrees with you on Count XVI, invasion of privacy, and orders the Defendants to pay some money, are the patients going to get that money or are you going to get that money?" Miguel Casillas Deposition, Page 150, Lines 5-8. Dr. Casillas responded "The patients are not the Plaintiffs." <u>See</u> Exhibit A, Miguel Casillas, M.D. Deposition, Page 150, Line 11.

180.    Dr. Casillas admitted that he has "no idea" how many patients' privacy was allegedly violated, but in any event Plaintiffs were not going to ask the jury to award any money on behalf of the patients. See Exhibit A, Miguel Casillas, M.D. Deposition, Page 150, Line 21- Page 151, Line 5.

**XXV.**     **Undisputed Material Facts Regarding Plaintiffs' Claim In Count XVII Of The Amended Complaint Alleging Breach Of Fiduciary Duty (Owed To Patients)**

181.    Michael Casillas admitted that they had no evidence that Dr. Robinson or ARC engaged in a breach of fiduciary duties with regard to the patients.  See Exhibit E, Michael Casillas Deposition, Page 203, Line 25 – Page 204, Line 5.  Dr. Casillas was not clear on this claim, but regardless did not know how many patients were at issue and was not going to ask for damages on their behalf regardless.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 150, Line 15 – Page 151, Line 5.

**XXVI.**    **Undisputed Material Facts Regarding Plaintiffs' Claims For Damages**

182.    Just like Dr. Casillas (50% owner of all of three Plaintiffs and the principal individual associated with the Plaintiffs) knows of little evidence supporting the claims against Defendants in this case, he was equally as unknowledgeable regarding any supposed damages.

183.    Specifically, Dr. Casillas was asked "[f]or all of the claims that we've talked about so far that I've asked you about, do you know how much money you are going to ask the jury to award . . . do you know how much money that you are going to ask the jury to order Dr. Robinson and ARC to pay?"  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 132, Lines 7-11.

184.    Dr. Casillas stated "[a]t this time, no."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 132, Lines 12-14.

185.    Moreover, (despite the discovery cutoff) to his knowledge Plaintiffs had not even retained any expert or accountant to help formulate those damages, see Exhibit A, Miguel Casillas, M.D. Deposition, Page 132, Lines 15-17.

186.    Michael Casillas confirmed that no expert witness had been hired by Plaintiffs. See Exhibit E, Michael Casillas Deposition, Page 168, Line 22 - Page 169, Line 1.

**XXVII.     Undisputed Material Facts Regarding Dr. Casillas' And Michael Casillas' Closing Thoughts In Their Depositions**

187.    Dr. Casillas was asked and stated that there was nothing that he wanted to change about his testimony in his deposition.  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 156, Lines 14-16.

188.    Michael Casillas, who as reflected above admitted that Plaintiffs have little or no evidence with regard to most if not all of their claims against Dr. Robinson and ARC, agreed that he testified truthfully and honestly.  See Exhibit E, Michael Casillas Deposition, Page 206, Lines 20-25.

189.    Since credibility is a factor is an important factor in any lawsuit, it is significant that Michael Casillas' truthful and honest testimony included his admission that his father, Dr. Casillas, had stated to him in the past that he had been abducted by aliens.  See Exhibit E, Michael Casillas Deposition, Page 208, Line 25 – Page 209, Line 2.

190.    While Michael did not believe that aliens existed, because of the alien experience that Dr. Casillas had related to Michael years previously, Michael had to assume that his father believed in the existence of aliens.  See Exhibit E, Michael Casillas Deposition, Page 209, Lines 6-9.

191.    Despite what Defendants believe is a glaring lack of evidence to support Plaintiffs' lawsuit in general and numerous causes of action in particular, when Dr. Casillas was asked "do you have anything you would like to apologize to Dr. Robinson for?" he unfortunately stated "No way."  See Exhibit A, Miguel Casillas, M.D. Deposition, Page 157, Lines 4-6.

Respectfully submitted,

/s/ Bryce Brewer
Bryce Brewer, ABN 2002013
Bryce Brewer Law Firm
2120 East Kiehl Avenue
Sherwood, AR 72120
501-978-3030 – Phone
501-978-3050 – Facsimile
bryce@brycebrewerlaw.com

and

Matthew R. House, ABN 99150
James, House, Downing & Lueken, P.A.
801 West Third Street
P. O. Box 3585
Little Rock, AR 72203
501-372-6555 – Telephone
501-372-6333 – Facsimile
mhouse@jamesandhouse.com

ATTORNEYS FOR THOMAS F. ROBINSON,
M.D. AND ARC REHABILITATION CENTER,
P.A.

36

## CERTIFICATE OF SERVICE

I, Matthew R. House, do hereby certify that a copy of the foregoing was delivered to the following, via e-mail and CM/ECF this 11th day of January, 2019:

James D. Rankin, III
Perkins Peiserich Greathouse Morgan Rankin
P. O. Box 251618
Little Rock, AR 72225-1618
jim@ppgmrlaw.com

Julie DeWoody Greathouse
Perkins Peiserich Greathouse Morgan Rankin
P. O. Box 251618
Little Rock, AR 72225-1618
julie@ppgmrlaw.com

Micah Goodwin
Perkins Peiserich Greathouse Morgan Rankin
P. O. Box 251618
Little Rock, AR 72225-1618
micah@ppgmrlaw.com

Luther Oneal Sutter
Sutter & Gillham, PLLC
P. O. Box 2012
Benton, AR 72018
Luthersutter.law@gmail.com

John Buzbee
Nixon & Light
10201 West Markham Street
Suite 108
Little Rock, AR 72205
john@nixonandlight.com

Chase Steppig
440 Louisiana Street, Suite 900
Houston, TX 77002
chase.steppig@yahoo.com

_____
Matthew R. House

37